Benjeman Beck (SBN 268617)
ben@nolemon.com
Carey Wood (SBN 292447)
carey@nolemon.com
Sean Crandall (SBN 306768)
sean@nolemon.com
**CONSUMER LAW EXPERTS, PC**
5757 West Century Blvd, Suite 500
Los Angeles, CA 90045
Telephone: (310) 442-1410
Facsimile: (877) 566-8828

Attorneys for Plaintiff,
HENRY CANANI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| HENRY CANANI,<br><br>        Plaintiff,<br><br>    vs.<br><br>FORD MOTOR COMPANY; and<br>DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. 2:21-cv-03346-SB-JC<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Trial:   December 13, 2021<br>PTC:    December 3, 2021<br><br>Judge: Hon. Stanley Blumenfeld<br>Magistrate: Hon. Jacqueline Chooljian |

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

**TO THE HONORABLE COURT:**

PLEASE TAKE NOTICE THAT Plaintiff HENRY CANANI hereby submits the attached Memorandum of Contentions of Fact and Law pursuant to L.R. 16-4.

Dated:  November 12, 2021                    CONSUMER LAW EXPERTS, PC

By: */s/Benjeman Beck*
_____
Benjeman Beck
Carey Wood
Sean Crandall
Attorneys for Plaintiff,
HENRY CANANI

1

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

## TABLE OF CONTENTS

I.   SUMMARY STATEMENT...........................................................................1

  A.  Plaintiff's Purchase of the Lemon From Defendant .........................1

  B.  Plaintiff's Relevant Repair History ...................................................1

II.  ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS AND
DAMAGES...............................................................................................3

  A.  Plaintiff's § 1793.2(d) Claim for Failure to Repurchase or Replace Vehicle3

    1.  Affirmative obligation to repurchase or replace. .......................................4

  B.  Damages on § 1793.2(d)(2) Claim.....................................................5

  C.  Plaintiff's § 1793.2(b) Claim for Failure to Commence Repairs Within a
Reasonable Time and Failure to Complete Repairs Within 30 Days .................6

  D.  Plaintiff's Claim for Failure of Defendant to Make Available to its
Authorized Service and Repair Facilities Sufficient Service Literature and
Replacement Parts to Effect Repairs During the Express Warranty Period in
Violation of Civil Code Section 1793.2(a)(3)......................................................7

  E.  Plaintiff's Breach of Express Warranty (BOEW) Claim ..............................8

  F.  Plaintiff's Breach of Implied Warranty Claim (BOIW) ..............................9

    1.  The consumer is not required to seek repairs before asserting a claim for
breach of the implied warranty of merchantability ...................................11

    2.  The implied warranty covers the entire consumer good and the Defendant
may not limit the warranty to the scope of its express written warranty.......11

    3.  In order to be "fit for [its] ordinary purpose," a consumer good be in
a safe condition and free of defects. .................................................11

  G.  Damages on BOEW, BOIW, 1793.2(b), and 1793.2(a)(3) Claims. ...........12

    1.  Restitution of the Purchase Price ...........................................12

    2.  Incidental/Consequential Damages...........................................13

III. CIVIL PENALTIES ...............................................................................14

  A.  Civil Code § 1794(c) Penalty ..........................................................14

IV. AFFIRMATIVE DEFENSES AND KEY EVIDENCE IN OPPOSITION...16

  A.  16th Affirmative Defense: Failure to Use Third-Party  Dispute  Resolution
and 36th Affirmative Defense: Arbitration Agreement ......................................17

  B.  19th Affirmative Defense: Failure to Notify; 32nd Affirmative  Defense: No
Civil Penalty; and 39th Affirmative Defense: Failure  to Provide Notice.........18

C.  18th Affirmative Defense: Good Faith Evaluation; 21st Affirmative Defense: Compliance with the Law; 22nd Affirmative Defense: Good Faith ..19

V.  ANTICIPATED EVIDENTIARY ISSUES ....................................................19

VI. ISSUES OF LAW WHICH ARE GERMANE TO THE CASE....................20

VII.  BIFURCATION OF ISSUES .......................................................................20

VIII. JURY TRIAL ............................................................................................20

IX. ATTORNEYS' FEES...................................................................................20

ii

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Cummins, Inc. v. Superior Ct.,*

4
   36 Cal.4th 478 (Cal. 2005)..................................................................7

*Gomez v. Volkswagen of America, Inc.,*

5
   169 Cal.App.3d 921 (1985)...........................................................6, 15

6
*Gusse v. Damon Corp.,*
   470 F.Supp.2d 1110 (C.D. Cal. 2007)..................................................14

7
*Isip v. Mercedes-Benz USA, LLC,*
   155 Cal.App.4th 19 (2007)...........................................................11, 12

8
*Jensen v. BMW of North Am., Inc.,*

9
   35 Cal. App. 4th 112 (1995)...........................................................7, 16

10
*Krotin v. Porsche Cars North America, Inc.,*
   38 Cal.App.4th 294 (1995)....................................................4, 13, 18

11
*Lukather v. General Motors, LLC,*

12
   181 Cal.App.4th 1041 (2010)..............................................................17

13
*Milicevic v. Fletcher Jones Imports, Ltd.,*
   402 F.3d 912 (9th Cir. 2005)...............................................................6

14
*Mocek v. Alfa Leisure, Inc.,*
   114 Cal.App.4th 402 (2003)...........................................................11, 12

15
*Music Acceptance Corp. v. Lofing,*

16
   32 Cal.App.4th 610 (1995)..................................................................13

17
*National R.V., Inc. v. Foreman,*
   34 Cal.App.4th 1072 (1995)................................................................6

18
*Oregel v. American Isuzu Motors, Inc.,*
   90 Cal.App.4th 1094 (2001)...............................................................16

19
*Park City Services, Inc. v. Ford Motor Co., Inc.,*

20
   144 Cal.App.4th 295 ............................................................................9

21
*Rose v. Chrysler Motors Corp.,*
   212 Cal.App.2d 755 (1963)..................................................................9

22
*Santana v. FCA US, LLC,*
   56 Cal.App.5th 334 .............................................................................19

23
*Schreidel v. American Honda Motor Co.,*

24
   34 Cal.App.4th 1242 (1995)...........................................................15, 16

25
*Seely v. White Motor Co.,*
   63 Cal.2d 9 (1965)...............................................................................13

26
*Suman v. Superior Court,*
   39 Cal.App.4th 1309 (1995)...............................................................16

27

28

i

**TABLE OF AUTHORITIES**

1

**STATUTES**

2

15 U.S.C. § 2301(7)......................................................................10

3

15 U.S.C. § 2308............................................................................10

15 U.S.C. § 2308(b)......................................................................10

4

15 U.S.C. § 2308(c)......................................................................10

Cal. Civ. Code § 1791(a)..............................................................11

5

Cal. Civ. Code § 1791.1................................................................10

6

Cal. Civ. Code § 1791.2(a)..............................................................8

Cal. Civ. Code § 1792...................................................................10

7

Cal. Civ. Code § 1793...................................................................11

8

Cal. Civ. Code § 1793(d)(2).............................................................8

Cal. Civ. Code § 1793.2 (a)(1)(A)....................................................7

9

Cal. Civ. Code § 1793.2(a)(1)(B).....................................................7

10

Cal. Civ. Code § 1793.2(b)..........................................................6, 8

11

Cal. Civ. Code § 1793.2(d)(2).......................................................4, 5

Cal. Civ. Code § 1793.2(d)(2)(C).....................................................5

12

Cal. Civ. Code § 1793.2(d) and (a)(2)..............................................3

13

Cal. Civ. Code § 1793.2(a)(3)7...................................................7, 8

Cal. Civ. Code § 1793.22(a)(3).........................................................7

14

Cal. Civ. Code § 1794........................................................5, 6, 9, 12

15

Cal. Civ. Code § 1794(a).............................................9, 10, 11, 12

Cal. Civ. Code § 1794(b)..............................................13, 14, 15

16

Cal. Civ. Code § 1794(b)(1)..........................................................12

17

Cal. Civ. Code § 1794(b)(2)..........................................................12

Cal. Civ. Code § 1794(c)........................................................14, 18

18

Cal. Civ. Code § 1794(d)..............................................................20

19

Cal. Civ. Code § 1794(e)..............................................................18

Cal. Civ. Code § 1794(e)(3)..........................................................18

20

21

22

23

24

25

26

27

28

ii

## I.     SUMMARY STATEMENT

### A.     <u>Plaintiff's Purchase of the Lemon From Defendant</u>

This Lemon Law case arises from Plaintiff HENRY CANANI's purchase of a new model-year 2018 Ford F-150 truck for a total sales price of $40,496.85. (hereinafter, the "Lemon" or "Subject Vehicle"), on or about <u>October 14, 2018</u>, manufactured and distributed by Defendant FORD MOTOR COMPANY ("Ford" or "Defendant").  Plaintiff anticipated that the car would provide safe, dependable, and reliable transportation.  Unfortunately, unbeknownst to Plaintiff, the Subject Vehicle was defective and would require numerous trips to the dealership to address, among numerous other things, a defective Evaporative Emissions ("EVAP") system and catalytic converter.  According to the records, Plaintiff visited the dealership no less than seven (7) times for these issues.

### B.     <u>Plaintiff's Relevant Repair History</u>

On or about <u>November 22, 2019</u>, with approximately 6,297 miles on the odometer, Plaintiff presented the Subject Vehicle to Ford's authorized repair facility with complaints, in relevant part, that the Subject Vehicle's Check Engine Light was on.  Defendant's repair facility verified Plaintiff's concerns and retrieved Diagnostic Trouble Code (DTC) P0430.  Defendant's repair facility removed and replaced the Subject Vehicle's left catalytic converter under warranty.

On or about <u>June 29, 2020</u>, with approximately 10,244 miles on the odometer, Plaintiff presented the Subject Vehicle to Ford's authorized repair facility with complaints, in relevant part, that the Subject Vehicle's Check Engine Light was coming off and on.  Defendant's authorized repair facility was unable to verify the concern.

On or about <u>August 10, 2020</u>, with approximately 10,893 miles on the odometer, Plaintiff presented the Subject Vehicle to Ford's authorized repair facility with complaints, in relevant part, that the Subject Vehicle's Check Engine Light was illuminated.  Defendant's authorized repair facility verified these

1

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

concerns and retrieved DTC P0430 and P0420. Defendant's repair facility found the catalytic converter efficiency below threshold on bank 1 and bank 2. Defendant's authorized repair facility removed and replaced both downstream 02 sensors.

On or about August 31, 2020, with approximately 11,330 miles on the odometer, Plaintiff presented the Subject Vehicle to Ford's authorized repair facility with complaints, in relevant part, that the Subject Vehicle's Check Engine Light was illuminated. Defendant's authorized repair facility verified Plaintiff's concerns. Defendant's authorized repair facility retrieved DTC P0420, indicating the catalytic efficiency below threshold. Upon inspection, and after performing an exhaust leak test, Defendant's authorized repair facility found a small exhaust leak on the left turbo waste gate rod shaft. Defendant's authorized repair facility replaced the fuel rod pressure sensor and reset the KAM memory under warranty.

On or about November 20, 2020, with approximately 13,003 miles on the odometer, Plaintiff presented the Subject Vehicle to Ford's authorized repair facility with complaints, in relevant part, that that the Subject Vehicle's Check Engine Light was again illuminated. Defendant's authorized repair facility verified Plaintiff's concern and found the Subject Vehicle's catalyst system efficiency below threshold (Bank 2). Indeed, Defendant's authorized repair facility retrieved Diagnostic Trouble Code P0430 and installed a new catalytic converter on bank 2 and replaced the R/F sensor and catalyst.

On or about April 23, 2021, with approximately 15,520 miles on the odometer, Plaintiff presented the Subject Vehicle to Ford's authorized repair facility with complaints, in relevant part, that the Subject Vehicle's Check Engine Light was again illuminated. Defendant's authorized repair facility verified Plaintiff's concern and retrieved Diagnostic Trouble Code P0430. Due to an excessive workload at the dealership, however, Plaintiff was advised to come back the next week to have the Subject Vehicle repaired.

2

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

On or about <u>April 27, 2021</u>, with approximately 15,562 miles on the odometer, Plaintiff returned the Subject Vehicle to Defendant's authorized repair facility to have the repairs performed. Defendant's authorized repair facility retrieved DTC P0420, indicating the Subject Vehicle's catalyst efficiency was again below threshold. Defendant's authorized repair facility performed a fuel pressure test, which the Subject Vehicle failed. As a result, Defendant's authorized repair facility once again removed and replaced the Subject Vehicle's catalytic converter under warranty.

Ultimately, Ford failed to promptly replace the vehicle or make restitution as required by Civ. Code §§ 1793.2(d) and (a)(2). Ford's failure to do so was willful insofar as it was aware of its inability to repair the vehicle after a reasonable number of attempts, yet failed to promptly replace it or make restitution, thus subjecting it to civil penalty damages under Civ. Code § 1794. As explained in further detail herein, Ford's awareness of these defects is reflected in its publicly available documents that catalog its attempt to address these defects. Plaintiff seeks full restitution, civil penalties, and attorney fees and costs.

## II.    ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS AND DAMAGES

### A.    <u>Plaintiff's § 1793.2(d) Claim for Failure to Repurchase or Replace Vehicle</u>

Plaintiff Henry Canani's first claim, for failure to promptly repurchase or replace a new motor vehicle, arises pursuant to California Civil Code § 1793.2(d) and 1794(a). **<u>Defendant has admitted liability to this cause of action.</u>**

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle.

3

Cal. Civ. Code § 1793.2(d)(2).  Plaintiff must establish the following:  (a) Plaintiff purchased a new motor vehicle manufactured by Ford Motor Company (Ford); (b) Ford gave Plaintiff a written warranty; (c) the new motor vehicle had a defect that was covered by the warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's situation; (d) Plaintiff delivered the vehicle to Ford or its authorized repair facility for repair of the defect; (e) Ford's authorized repair facility failed to repair the vehicle to match the written warranty after a reasonable number of opportunities to do so; and (f) Ford did not promptly replace or buy back the vehicle.  *See* Judicial Council of California Civil Jury Instructions (CACI) 3201.

A lawsuit for failing to promptly repurchase a new motor vehicle is authorized by section 1794: "(a) Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter . . . may bring an action for the recovery of damages and other legal and equitable relief."  Cal. Civ. Code § 1794(a).

### 1.   Affirmative obligation to repurchase or replace.

It is important to remember that Ford's obligation to repurchase or replace a vehicle is not triggered by a repurchase request. Rather, Ford has a continuing statutory duty to repurchase whenever the statutory requirements are met, regardless of whether Plaintiff makes a demand:

> [T]he Act does not require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties—other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle . . . . In reality, . . . the manufacturer seldom on its own initiative offers the consumer the options available under the Act: a replacement vehicle or restitution. Therefore, as a practical matter, the consumer will likely request replacement or restitution. But the consumer's request is not mandated by any provision in the Act.  Rather, the consumer's request for replacement or restitution is often prompted by the manufacturer's unforthright approach and stonewalling of fundamental warranty problems. An automobile manufacturer need not read minds to determine which vehicles are defective; it need only read its dealers' service records.

*Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 302-303 (1995).

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

1       Here, Defendant has admitted that the vehicle had an EVAP Defect that

2  substantially impaired the use of the vehicle.  The EVAP defect caused Plaintiff to

3  continue to return the vehicle to Ford's authorized dealership on multiple times to

4  no avail and caused Plaintiff to significantly modify how he used the vehicle.

5  Plaintiff will testify that the value of the vehicle has significantly diminished to him

6  based on the unrepaired defects that existed on the vehicle; and could pose a

7  potential safety risk.   Despite the multiple opportunities to repair what is

8  undisputedly a substantially impairing defect that Defendant was unable to repair

9  within a reasonable number of attempts and did not repurchase, Defendant did not

10  in fact repurchase the subject vehicle.  That which remains to be tried is whether

11  Defendant's failure to repurchase the subject vehicle was willful (e.g. whether it

12  reasonably and in good faith believed that a repurchase was unnecessary). *See* CACI

13  3244.

14      **B.**    **Damages on § 1793.2(d)(2) Claim**

15       The measure of restitution on a claim for violation section 1793.2(d) with

16  respect to a motor vehicle is explained in Civil Code § 1793.2(d)(2)(B):

> In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.

22       The Act also sets forth a provision for calculating a mileage deduction from

23  the recovery, based upon the mileage at which the vehicle was first delivered for

24  repair. Cal. Civ. Code § 1793.2(d)(2)(C).  Here, the parties have stipulated that the

25  damages for Plaintiff's Cal. Civ. Code section 1793.2(d) claim are $37,979.85.  As

26  such, evidence for damages supporting this claim is unnecessary.

27

28

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

**C.** **Plaintiff's § 1793.2(b) Claim for Failure to Commence Repairs Within a Reasonable Time and Failure to Complete Repairs Within 30 Days**

Plaintiff Henry Canani's second claim, for failing to commence repairs in a reasonable time and to complete them with 30 days, arises pursuant to California Civil Code § 1793.2(b) and 1794(a).

"Where . . . service or repair of the goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative in this state. Unless the buyer agrees in writing to the contrary, the goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days." Cal. Civ. Code § 1793.2(b).

"When the vehicle is out of service more than 30 calendar days, the nonconformity does not have to be ongoing." *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 916 (9th Cir. 2005) (decided under similar provision of Nevada law).

A consumer may sue for violation of these requirements under Civil Code section 1794, which provides, in relevant part: "(a) Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter . . . may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).

Ford routinely argues that this provision applies only when the car is actually in "the shop" for more than 30 days. Every published decision to consider subdivision (b) has concluded otherwise. *Gomez v. Volkswagen of America, Inc.*, 169 Cal.App.3d 921, 925 (1985). "This statute . . . sets a time limit for the repair of consumer goods (§ 1793.2, subd. (b)) . . . ." *National R.V., Inc. v. Foreman*, 34 Cal.App.4th 1072, 1077-1078 (1995). When the Legislature wants to require 30

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

1    days in the shop, it has said so. *See* Cal. Civ. Code § 1793.22(a)(3) (requiring 30

2    days in the repair facility in order to take advantage of a presumption that a

3    reasonable number of repair attempts have been made).

4         Plaintiff will introduce the same key evidence as described above under

5    Plaintiff's claim that Ford failed to promptly offer to replace the Vehicle or make

6    restitution after it failed to repair his Vehicle within a reasonable number of

7    attempts.

8    **D.    Plaintiff's Claim for Failure of Defendant to Make Available to**

9    **its Authorized Service and Repair Facilities Sufficient Service**

10   **Literature and Replacement Parts to Effect Repairs During the**

11   **Express Warranty Period in Violation of Civil Code Section**

12   **1793.2(a)(3)**

13        The Song-Beverly Act requires manufacturers of consumer goods sold in

14   California to make available to buyers service and repair facilities at which goods

15   can be repaired to conform to any express warranties provided by the

16   manufacturer.  "Every manufacturer of consumer goods sold in this state and for

17   which the manufacturer has made an express warranty" must "[m]aintain in this

18   state sufficient service and repair facilities" to carry out the terms of the express

19   warranty.  Cal. Civ. Code § 1793.2 (a)(1)(A); *see also Jensen v. BMW of North*

20   *Am., Inc.*, 35 Cal. App. 4th 112 (1995) (under the Act, a manufacturer that provides

21   warranty on consumer goods is required to maintain service and repair facilities in

22   California).

23        The manufacturer may maintain its own repair facility or may designate and

24   authorize an independent repair facility to meet its responsibilities under its

25   express warranties.  *See* Cal. Civ. Code § 1793.2(a)(1)(B); *see also Cummins, Inc.*

26   *v. Superior Ct.*, 36 Cal.4th 478, 484-485 (Cal. 2005).   The Act also requires the

27   manufacturer "[m]ake available to authorized service and repair facilities

28

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND
FACT**

sufficient service literature and replacement parts to effect repairs during the express warranty period." Cal. Civ. Code § 1793.2(a)(3).

Pursuant to Cal. Civ. Code § 1793(d)(2), if the manufacturer or its representative is unable to service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer is required to promptly replace the vehicle or make restitution to the buyer.

Ford was aware of its obligation to provide sufficient literature and replacement parts to allow its repair facilities to effect repairs to the Subject Vehicle during the warranty period.  Nevertheless, as evinced by the numerous unsuccessful repair attempts on the Vehicle by its authorized facilities, Ford failed to comply with the Act's requirements to honor to the express warranty.

Plaintiff will introduce evidence under Plaintiff's claim that Ford failed to promptly offer to replace the Vehicle or make restitution after it failed to repair his Vehicle within a reasonable number of attempts.  The damages for Plaintiff's Cal. Civ. Code section 1793.2(b) claim are the same as the 1793.2(d) claim and therefore the damages stipulated to in Plaintiff's first claim are already established.

### E.    Plaintiff's Breach of Express Warranty (BOEW) Claim

Plaintiff's fourth claim, for breach of express warranty, arises pursuant to California Civil Code sections 1791.2(a) and 1794(a).

"Any buyer of consumer goods who is damaged by a failure to comply with any obligation . . . under an implied or express warranty . . . may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).

"Where, as in this case, the express warranty contemplates that the seller's liability for a breach of warranty does not attach until he has had an opportunity to remedy the defects, his failure or refusal to act, where such opportunity is afforded the seller, fixes his liability. . . . An unsuccessful effort to remedy the defects renders the seller liable on his warranty; and the buyer is not bound to allow him a second

8

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

opportunity, or to permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." *Rose v. Chrysler Motors Corp.*, 212 Cal.App.2d 755, 763 (1963).

Ford may argue that the claim for breach of an express warranty is the same as a claim for violation of Civil Code section 1793.2(d), and claim that the requirement of making a "reasonable number of repair attempts" in section 1793.2(d) is also a requirement on a claim for breach of express warranty. This argument was expressly rejected in *Park City Services, Inc. v. Ford Motor Co.*, *Inc.*, 144 Cal.App.4th 295. There, the Court of Appeal expressly recognized that a claim for failure to repurchase was completely separate from a claim for breach of an express warranty. *Id.* at 301-03.

Ford's potential argument also has no merit because Civil Code section 1794(a) makes clear that a claim for violating section 1793.2(d) is entirely separate from a claim for breach of an express warranty. "Any buyer of consumer goods who is damaged by a failure to comply with any obligation [1] under this chapter or [2] under an implied or [3] express warranty . . . may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794 (bracketed material added).

A failure to repair within a reasonable number of attempts is a violation of Cal. Civil Code § 1793.2(d) and thus an obligation "[1] under this chapter." Cal. Civil Code § 1794(a). A breach of express warranty, on the other hand, is an obligation "[2] under an implied or [3] express warranty." *Id.* If the Legislature had intended to merge these three different claims, it would not have listed them separately. Ford's attempt to merge two of the three claims created by Cal. Civ. Code § 1794(a) should be rejected.

## F.   Plaintiff's Breach of Implied Warranty Claim (BOIW)

Plaintiff's fifth claim, for breach of the implied warranty of merchantability under Song-Beverly, arises pursuant to California Civil Code § 1791.1(a) and

9

1794(a).  **Defendant has admitted liability to this cause of action.**

"[E]very sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturers and the retail seller's implied warranty that the goods are merchantable."  Cal. Civ. Code § 1792.

The protections afforded by the implied warranty are defined in Civil Code §1791.1. "'Implied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. [and] (4) Conform to the promises or affirmations of fact made on the container or label."  Cal. Civ. Code § 1791.1(a).

In a commercial transaction, the implied warranty attaches and can be breached only at the moment that title passes. However, in a consumer transaction, the implied warranty has the same duration as the express warranty provided at the time of sale. "[I]mplied warranties[1] may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty."  15 U.S.C. § 2308(b).  Any limitation beyond that permitted under § 2308(b) is "ineffective for purposes of [federal law] and State law." 15 U.S.C. § 2308(c).

"Any buyer of consumer goods who is damaged by a failure to comply with any obligation . . . under an implied or express warranty . . . may bring an action for the recovery of damages and other legal and equitable relief." Cal. Civ. Code § 1794(a).

Under this claim, Plaintiff must establish that (a) Plaintiff purchased a consumer good from Ford's or its authorized dealership; (b)  at the time Plaintiff

---

[1] 15 U.S.C. § 2301(7) defines "implied warranty" to include any implied warranty arising under State law, as modified by 15 U.S.C. § 2308.

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

purchased the subject vehicle, Ford was in the business of selling new motor vehicles to retail buyers; and (c)  the subject vehicle was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purpose for which the goods are used,  or was not adequately labeled,  or did not measure up to the promises or facts stated on the label.

1.    The consumer is not required to seek repairs before asserting a claim for breach of the implied warranty of merchantability

A consumer who is injured by a breach of the implied warranty can revoke acceptance immediately without giving the manufacturer any opportunities to repair. "[T]here is no requirement the seller be given an opportunity to repair when the implied warranty of merchantability is breached." *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 404 (2003).

2.    The implied warranty covers the entire consumer good and the Defendant may not limit the warranty to the scope of its express written warranty.

Under Civil Code section 1791.1(a), the implied warranty covers the entire "consumer good," regardless of whether it is also covered by the manufacturer's written warranty. See Cal. Civ. Code § 1791(a) (consumer good means "any new product or part thereof."). When an express warranty is given, the Defendant may not disclaim or limit the implied warranty, in any way. Cal. Civ. Code § 1793. Thus, any attempt to limit the scope of the implied warranty to defects which are covered under an express warranty, is ineffective.

3.    In order to be "fit for [its] ordinary purpose," a consumer good must be in a safe condition and free of defects.

The words "fit for the ordinary purposes for which such goods are used" requires that the vehicle be "in safe condition and substantially free from defects." *Isip v. Mercedes-Benz USA, LLC*, 155 Cal.App.4th 19, 25 (2007).  Plaintiff need not establish that the "vehicle manifests a defect that is so basic that it renders the

11

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

vehicle unfit for the ordinary purpose of providing transportation." *Id.* "We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Id*. at 27.

Here, Defendant has admitted that it breached the implied warranty. As such, the required elements are conclusively established (with exception to damages). Plaintiff will present of damages, if necessary.

### G.   Damages on BOEW, BOIW, 1793.2(b), and 1793.2(a)(3) Claims.

Civil Code section 1794 sets forth a comprehensive damages scheme for claims brought under the SBWA.

#### 1.   Restitution of the Purchase Price

Section 1794 begins by adopting the measure of restitution from Civil Code section 1793.2(d), and then adds various remedies from the Commercial Code. Cal. Civ. Code § 1794(a), (b) ("The measure of the buyer's damages in an action under this section shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2, and [various Commercial Code remedies].").

Where "the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply." Cal. Civ. Code § 1794(b)(1). If "the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform." Cal. Civ. Code § 1794(b)(2).

The provisions of Civil Code section 1794(b)(1) "give a buyer the right to cancel the purchase contract and recover any amounts paid toward the purchase of the goods." *Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402, 407 (2003) (quotations omitted). However, Song-Beverly "contains no provision which

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

1  requires rejection or revocation of acceptance of the vehicle within a reasonable time

2  . . . ." *Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 300 (1995).

3       The evidence at trial will demonstrate that Mr. Canani accepted and

4  thereafter revoked acceptance of goods. As a result, Plaintiff is entitled to all of the

5  remedies set forth in Commercial Code sections 2711-2715.

6       Pursuant to Commercial Code section 2711, Mr. Canani is entitled to

7  recover "so much of the price as has been paid" and "any expenses reasonably

8  incurred in their inspection, receipt, transportation, care and custody." *Music*

9  *Acceptance Corp. v. Lofing*, 32 Cal.App.4th 610, 621 (1995) ("Thus, in the event

10 of a breach of the implied warranty of merchantability, the buyer is entitled to

11 cancel the contract and recover any amounts paid toward the purchase of the

12 goods."); *Seely v. White Motor Co.*, 63 Cal.2d 9, 14 (1965) ("The damages awarded

13 by the trial court, 'the loss directly and naturally resulting in the ordinary course of

14 events from the breach of warranty', can properly include lost profits as well as the

15 amount paid on the purchase price." [citations omitted]).

16      Here, the parties have stipulated that restitution damages are $37,979.85 and

17 Plaintiff does not anticipate presenting evidence of damages on this claim.

18              2.    Incidental/Consequential Damages

19      "The measure of the buyer's damages in an action under this section shall

20 include the rights of replacement or reimbursement as set forth in subdivision (d)

21 of Section 1793.2, and the following: . . . (2) Where the buyer has accepted the

22 goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the

23 measure of damages shall include the cost of repairs necessary to make the goods

24 conform." Cal. Civ. Code § 1794(b).

25      Section 2715 of the Commercial Code authorizes the recovery of incidental

26 and consequential damages. "(1) Incidental damages resulting from the seller's

27 breach include expenses reasonably incurred in inspection, receipt, transportation

28 and care and custody of goods rightfully rejected, any commercially reasonable

13

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach. (2) Consequential damages resulting from the seller's breach include (a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise . . . ." Cal. Comm. Code § 2715.

Because the Consumer Warranty Act expressly authorizes the recovery of incidental and consequential damages, any purported waiver of those damages is invalid. *Gusse v. Damon Corp.*, 470 F.Supp.2d 1110, 1117-18 (C.D. Cal. 2007).

Here, Plaintiff seeks all out-of-pocket repair costs incurred in attempting to repair the Subject Vehicle, as well as all other incidental and consequential damages, including registration costs amounting to $38,979.85 (the stipulated restitution amount of $37,095.15 + $1,884.70 the stipulated mileage offset).

## III.   CIVIL PENALTIES

### A.   Civil Code § 1794(c) Penalty

"(a) Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief. . . . (c) If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages. This subdivision shall not apply . . . with respect to a claim based solely on a breach of an implied warranty." Cal. Civ. Code § 1794.

Under section 1794(c), Mr. Canani is entitled to a civil penalty of double damages if he establishes that Ford's failure to comply with any obligation under the Song-Berly Consumer Warranty Act or any obligation imposed by a warranty or service contract was willful. *Id*. The Act prohibits a civil penalty only

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

where the claim is based solely on a breach of an implied warranty. *Id*.; *See also Gomez v. Volkswagen of America, Inc.*, 169 Cal.App.3d 921, 925 (1985).

"A civil penalty may be awarded if the jury determines that the manufacturer knew of its obligations but intentionally declined to fulfill them. There is no requirement of blame, malice or moral delinquency.  However, a violation is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present." *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1249-1250 (1995).

The Court may determine that Ford acted willfully even if it was never able to duplicate the problems and believed that the vehicle was repaired.  *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th 1242, 1254 (1995).

> "The basis of Honda's argument regarding its nonliability for civil penalties is the state of Honda's knowledge regarding the defects. Honda claims the record shows that its mechanics were unable to duplicate the problems Schreidel described and that Schreidel herself was unable to duplicate the problems for them while at the dealership. . . . What Honda ignores in the record, however, is that the problems were admittedly intermittent, that [Plaintiff] had brought the problems to the dealership's attention on six separate occasions, and that an independent service station mechanic reported his observation of the pedal sticking problem to the dealership. Honda's attempts to duplicate the problems were minimal and, even after Schreidel brought the matter to arbitration and demonstrated the problem, Honda only offered to repair, not replace, the car as required by statute."

*Id*. "The customer relations department characterized her complaints as a customer problem and closed its file when the dealership could not duplicate her complaints. No procedure was ever instituted to replace her car." *Id.*

There are three seminal decisions on civil penalties and each discusses the following factors that a jury should consider in deciding whether to impose a penalty:

(1) The number of repair attempts that were made to address the problems,

(2) Whether the repair attempts were successful,

(3) Whether the manufacturer was aware of the number of repair attempts and their failure,

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

1    (4) Whether the manufacturer was aware of its obligations under the law,

2    (5) Whether the manufacturer has an accurate, written policy to guiding its

3    compliance with the law[2],

4    (6) Whether the manufacturer offered to repurchase or replace the produce

5    or offered some other remedy (such as repair) instead, and

6    (7) Whether the manufacturer attempted to blame the consumer instead of

7    accepting responsibility for its action.

8    *Oregel v. American Isuzu Motors, Inc.*, 90 Cal.App.4th 1094, 1095 (2001)

9    (factors 1-5); *Jensen v. BMW of North America, Inc.*, 35 Cal.App.4th 135, 136

10   (1995) (factors 1-6); *Schreidel v. American Honda Motor Co.*, 34 Cal.App.4th

11   1242, 1254 (1995) (factors 1-7).

12   "If the [Court] chooses to impose a penalty, the amount may be up to two

13   times the amount of damages . . . . There is no definite or required method of

14   determining a penalty nor is the opinion of a witness required as to the amount of

15   a penalty." *Suman v. Superior Court*, 39 Cal.App.4th 1309, 1323 (1995).

16   **IV.   AFFIRMATIVE DEFENSES AND KEY EVIDENCE IN**

17   **OPPOSITION**

18   Defendant currently asserts **forty (40) affirmative defenses**.  As discussed

19   above, Defendant has agreed to admit to liability on a variety of the causes of action

20   listed above, including the § 1793.2(d) claim, breach of express warranty claim,

21   and breach of implied warranty claim.  **Defendant has not yet filed or provided a**

22   **copy of its Amended Answer**, which Plaintiff expects will substantially reduce

23   and/or eliminate the Affirmative Defenses claimed by Defendant.[3]

24   _____

25   [2] The relevancy of a manufacturer's repurchase policies and procedures turns
     on whether they were followed and were lawful and not, as is the case here, where

26   there was no pre-litigation repurchase evaluation.

27   [3] Plaintiff anticipates that, at the very least, the following affirmative defenses
     will no longer be relevant or appropriate based on Defendant's admission of liability

28   as to breach of express warranty and breach of implied warranty: 1st (Failure to State

16

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

Furthermore, CACI provides only three affirmative defenses to the Song-Beverly Consumer Warranty Act:  Unauthorized or Unreasonable Use (3220), Disclaimer of Implied Warranties (3221), and Statute of Limitations (3222). Nevertheless, Plaintiff addresses some of the anticipated affirmative defenses below.

## A.   16th Affirmative Defense: Failure to Use Third-Party Dispute Resolution and 36th Affirmative Defense: Arbitration Agreement

These "affirmative defenses" claim that Defendant is entitled to relief because it makes available a qualified third-party dispute resolution program (16th Affirmative Defense) and that Plaintiff's claims were subject to an arbitration agreement (36th).  As discussed above, these are not affirmative defenses.

As discussed in greater detail in Plaintiff's forthcoming Joint Motion *in Limine* No. 3 to Exclude Evidence, Argument, or Testimony Referring to Arbitration, Defendant had an affirmative duty to offer repurchase and Plaintiff was not required to participate in any third-party dispute resolution program or arbitration.  *Lukather v. General Motors, LLC*, 181 Cal.App.4th 1041, 1050 (2010).  The "Act does not *require* consumers to take any affirmative steps to secure relief . . .  other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle." *Id.*  Accordingly, the Act does not require arbitration nor does the Act make the availability of arbitration a defense to Defendant's obligations to repurchase a

a Cause of Action); 2nd (Statute of Limitations); 3rd (Estoppel); 4th (Waiver); 5th (Laches); 6th (Economic Loss Rule); 7th (Vehicle Fit for Intended Purpose); 8th (Duration of Implied Warranty); 9th (Lack of Maintenance); 10th (Unreasonable/Unauthorized Use); 11th (No Timely Revocation); 12th (No Reasonable Number of Repair Attempts); 13th (Preemption); 14th (Performance); 15th (Failure to Abide by Terms of Warranty); 17th (Accord and Satisfaction); 20th (Complete Performance); 23rd and 27th (No Breach); 24th (Independent Causes); 25th (Failure to Inspect); 26th (Failure to Maintain); 28th (No Affirmative Conduct); 29th (Failure to Mitigate); 30th (Excessive/Speculative Damages); 31st (Disclaimer of Incidental/Consequential Damages); 33rd (Set Off); 34th (Spoliation of Evidence); 35th (Fees and Costs); 37th (Implied Warranty); 38th (Failure to Provide Reasonable Opportunity to Repair); and 40th (Additional Affirmative Defenses).

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

1   defective vehicle. Thus, these "affirmative defenses" are no defenses at all and is
2   completely contrary to well-settled law.

3      **B.**   **19th Affirmative Defense: Failure to Notify; 32nd Affirmative**
4            **Defense: No Civil Penalty; and 39th Affirmative Defense: Failure**
5            **to Provide Notice**

6      These "affirmative defenses" claim that Plaintiff filed to provide timely notice
7   of his claims and alleged defects (including written notice pursuant to Civil Code
8   section 1794(e)(3), and that therefore Defendant is not liable for civil penalty
9   damages under Civil Code section 1794(e).

10      As discussed above, these are not affirmative defenses. Nevertheless, Plaintiff
11  anticipates Defendant will claim that: (1) Ford can only perform a repurchase
12  evaluation when a consumer requests a repurchase; (2) Ford is under no obligation
13  to evaluate a consumer's vehicle for repurchase unless the consumer affirmatively
14  requests a repurchase; and that, therefore, Defendant cannot be held liable for civil
15  penalty damages.

16      As a preliminary matter, and as discussed above, Plaintiff is not seeking
17  recovery of civil penalty damages under Civil Code section 1794(e) (failure to
18  maintain a qualified third-party dispute resolution program which has a notice
19  requirement), just Civil Code section 1794(c). See Section III.A, *supra*. Thus,
20  Defendant's arguments related to the recovery of civil penalty damages under
21  1794(e) (and the written notice requirement of 1794(e)(3)) are completely
22  irrelevant.

23      Further, as discussed in greater detail in Plaintiff's forthcoming Joint Motion
24  *in Limine* No. 2 to Exclude Evidence or Argument Suggesting Plaintiff Was
25  Required to Affirmatively Request a Repurchase, Defendant had an affirmative
26  duty to offer repurchase and Plaintiff was not required to affirmatively request a
27  repurchase.  See *Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294,
28  302-303 (1995). See also *Santana v. FCA US, LLC*, 56 Cal.App.5th 334, 347. The

Magistrate Judge assigned to this matter, the Honorable Judge Chooljian, agreed with this position. Dkt. No. 20. Thus, these "affirmative defenses" are no defenses at all and are completely contrary to well-settled law.

Further, the evidence, including Defendant's Rule 30(b)(6) witness Julie Moore's testimony, reveals that Defendant had the capacity to review the warranty repair orders for the Subject Vehicle and, therefore, to evaluate whether Plaintiff's vehicle qualified for repurchase.

    **C.**    <u>**18th Affirmative Defense: Good Faith Evaluation; 21st Affirmative Defense: Compliance with the Law; 22nd Affirmative Defense: Good Faith**</u>

Evidence of Defendant's conduct prior to the filing of the lawsuit is relevant toward Defendant's various good faith/compliance with the law affirmative defenses. As Defendant now concedes through its admission of liability, Defendant failed to comply with its statutory obligation to repurchase the subject vehicle under Cal. Civ. Code section 1793.2(d) which caused Plaintiff to file the instant lawsuit. The only relevant evidence of Defendant's conduct is its rationale for not repurchasing the vehicle prior to the filing of the lawsuit (e.g. whether it had a reasonable and good faith belief why the vehicle did not qualify for repurchase). Plaintiff does not anticipate any evidence presented by Defendant to establish this affirmative defense.

Plaintiff anticipates the defense will attempt to introduce inadmissible, post-litigation settlement discussions and other evidence to show it acted in good faith *after* the lawsuit was filed (the subject of Plaintiff's Motion *in Limine* No. 1). The presentation of evidence on this issue will turn largely on the Court's ruling on Plaintiff's Motion *in Limine* Nos. 1 and 2.

## V.    ANTICIPATED EVIDENTIARY ISSUES

Plaintiff does not anticipate any problems introducing evidence in support of Plaintiff's case in chief. However, Plaintiff anticipates that Defendant may attempt

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

to introduce evidence at trial that was not disclosed in discovery and not disclosed in Rule 26 disclosures.  Plaintiff will seek to exclude such evidence.

## VI.    ISSUES OF LAW WHICH ARE GERMANE TO THE CASE

Plaintiff anticipates that a number of issues of law that are germane to the case will arise in connection with the briefing of jury instructions.  Plaintiff will brief the other issues of law, including issues relating to evidentiary presumptions, burdens of proof, damages, etc., in connection with those jury instructions.

## VII.   BIFURCATION OF ISSUES

Plaintiff does not request the bifurcation of any issues in this case.

## VIII.  JURY TRIAL

All of the issues raised in the Complaint are triable by a jury as a matter of right.  A timely jury demand was made in the Complaint.

## IX.    ATTORNEYS' FEES[4]

If Plaintiff prevails, Plaintiff will seek to recover attorneys' fees pursuant to California Civil Code section 1794(d), which provides as follows:  "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."

//

///

///

///

---

[4] The parties have stipulated that there will be no discussion of attorney fees, costs or expenses.  As such, Plaintiff did not file a motion *in limine* to exclude such argument or testimony and trusts that such evidence or argument will not be presented.

20

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

1

2      Dated: November 12, 2021          Respectfully submitted,
                                         CONSUMER LAW EXPERTS, PC
3

4                                        By: */s/Benjeman Beck*
                                         _____
5                                            Benjeman Beck
                                             Sean Crandall
6                                            Carey Wood
                                             Attorneys for Plaintiff,
7                                            HENRY CANANI

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021, I filed the foregoing document entitled **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

By: */s/Benjeman Beck*
      Benjeman Beck
      Sean Crandall
      Carey Wood
      Attorneys for Plaintiff,
      HENRY CANANI