Benjeman Beck (SBN 268617)
ben@nolemon.com
Carey Wood (SBN 292447)
carey@nolemon.com
Sean Crandall (SBN 306768)
sean@nolemon.com
**CONSUMER LAW EXPERTS, PC**
5757 West Century Blvd, Suite 500
Los Angeles, CA 90045
Telephone: (310) 442-1410
Facsimile: (877) 566-8828

Attorneys for Plaintiff,
HENRY CANANI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| HENRY CANANI,<br><br>            Plaintiff,<br><br>      vs.<br><br>FORD MOTOR COMPANY; and<br>DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No. 2:21-cv-03346-SB-JC<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE SETTLEMENT COMMUNICATIONS; DECLARATION OF BENJEMAN BECK**<br><br>Date:      December 3, 2021<br>Time:      11:00 a.m.<br>Place:      U.S. Courthouse<br>            350 West 1st Street,<br>            Los Angeles, CA 90012<br>            Courtroom 6C<br><br>Pretrial conference: December 3, 2021<br>Trial Date: December 13, 2021<br><br>Judge: Stanley Blumenfeld<br>Magistrate: Jacqueline Chooljian |

---

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF BENJEMAN BECK**

I.    **EVIDENCE TO BE EXCLUDED**

       Plaintiff seeks an order excluding any evidence of the following settlement communications: (1) April 30, 2021 – Email; (2) August 16, 2021; (3) August 30, 2021 – Rule 68 Offer served on Plaintiff's counsel; (4) October 21, 2021 letter; and (5) October 21, 2021 – Rule 68 Offer[1] (the "Settlement Communications") which are barred from admissibility under FRCP 68, FRE 401, 403, 408 and 502 as they are not relevant, will confuse the issues, will waste time and are all subject to the attorney-client privilege as they were all sent to Plaintiff's counsel.

II.   **MOVING PARTY'S CONTENTIONS**

       On October 29, 2021, Defendant admitted the 2018 Ford F-150 qualifies for restitution under the Song-Beverly Consumer Warranty Act (the "Act"), Civil Code section 1793.2(d)(2) (breach of express warranty) and Civil Code section 1791.3 (breach of implied warranty).  Having so admitted, Defendant has also necessarily admitted that the vehicle contains a defect that substantially impairs its use, value or safety that it was unable to repair within a reasonable number of attempts.  It is undisputed that Ford did not repurchase the vehicle prior to the filing of the instant lawsuit.

       What remains to be tried is whether Ford's decision not to repurchase the vehicle before the lawsuit was filed was willful (e.g. was Ford's decision based on a reasonable and good faith belief that it was not required to repurchase the vehicle).  Plaintiff contends that Ford did not have a reasonable and good faith belief for refusing to repurchase the vehicle which it now admits qualified for repurchase.  Ford contends that it was not required to repurchase the vehicle because it reasonably and in good faith believed a repurchase was not required.

---

[1] (*See* Declaration of Benjeman Beck ("Beck Decl.") at ¶¶ 4-9, Exs. 2-7.)

1

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF BENJEMAN BECK**

To avoid assessment of a civil penalty, Ford now seeks to introduce settlement discussions made after the lawsuit was filed to establish that Ford complied with its statutory obligations before the lawsuit was filed: "as evidence of: 1) its good faith actions and intent, and 2) Plaintiff's knowledge that Ford was willing to repurchase his vehicle as early as two months after he filed his lawsuit and while his vehicle was still at the dealership for its last presentation." (*See* Ford's October 29, 2021 correspondence attached to the Beck Decl. at ¶ 4, Ex. 2).

## A. Rule 68 Offers Are Inadmissible

"Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs." FRCP 68, subdivision (b). Plaintiffs did not accept Defendant's August 16, 2021 and October 21, 2021 Rule 68 Offers. No exceptions apply under FRCP 68 and the Court should properly exclude both Rule 68 Offers from the evidence at trial.

## B. Settlement Communications Are Inadmissible Under FRE 408

Settlement offers and statements made during the negotiation of settlement are generally not admissible, regardless of when they were made. FRE 408 states in part as follows:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or ***disprove the validity*** or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) ***furnishing,*** promising, or offering--or accepting, promising to accept, or offering to accept--***a valuable consideration in compromising or attempting to compromise the claim***; and

Fed. R. Evid. 408 (emphasis added). Here, Ford claims that it seeks to introduce the Settlement Communications not to prove lack of liability but rather to prove "good faith actions and intent. . . ." (Beck Decl. at ¶ 4, Ex. 2.) Ford's good faith or lack thereof in its decision to not repurchase the vehicle is a necessary element of the civil penalty component under Civil Code section 1794(c). Ford's attempt to

2

introduce settlement discussions to show that it acted in good faith so as to avoid civil penalty liability falls squarely within the prohibition from introduction into evidence to disprove liability under FRE 408.  Such evidence is properly excluded.

Ford next claims that it seeks to introduce Settlement Communications, specifically, the April 30, 2021 offer email to show "Plaintiff's knowledge that Ford was willing to repurchase his vehicle as early as two months after he filed his lawsuit and while his vehicle was still at the dealership for its last presentation." (*See* Beck Decl. at ¶ 1, Ex. 2.)   Plaintiff's knowledge that Ford was willing to repurchase the vehicle after Plaintiff sued Ford is irrelevant under FRE 401 because that fact is inconsequential to determine whether Ford violated its statutory obligation to repurchase the vehicle.  There is no requirement that a Plaintiff must know Ford offered to repurchase the vehicle (e.g. had Ford attempted to repurchase the vehicle prior to the lawsuit then it may well assert an affirmative defense of compliance with the Act but such is not the case).  Instead, Ford's real intent in seeking to introduce the Settlement Communications is to suggest that Plaintiff and Plaintiff's lawyers knew of the offers and nevertheless persisted with the lawsuit out of greed.  Ford's true purpose of advancing the greed narrative is unfairly prejudicial to Plaintiff.

## C. <u>Ford's Settlement Offers Are Inadmissible As They Confuse The Issue</u>

Allowing evidence of failed settlement negotiations will confuse the jury and will suggest they reach a verdict for an improper purpose.  *Sw. Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1259 (D. Colo. 2003).

> At trial, a party's settlement offer could not be considered in a vacuum, but rather would have to be evaluated in the full context of settlement negotiations. That would necessarily involve testimony explaining negotiation strategies and the thought processes of the settlement participants. The parties might well feel compelled to offer testimony from their respective counsel to explain their settlement

3

strategies and the rationale for any offers or counter-offers. Jury confusion seems inevitable. . . .

Each of the Settlement Communications Ford seeks to introduce were exchanged between counsel for the parties. Accordingly, the foundational requirements under FRE 602 and 901 necessary for admission of the Settlement Communications would require testimony from the parties' counsel. The requirement that the attorneys for the parties testify to lay the proper foundation and explain the reasons why the offers were not accepted (e.g. whether the "offers" were valid, clear and conspicuous and were capable of being accepted). This required testimony invades the attorney-client and attorney work-product privilege and unfairly prejudices the jury against counsel under FRE 403. For example, it is unfairly prejudicial, if the jury were to believe, or the defense were able to argue, that the reason the jurors are required to serve as jurors in this federal court lemon law case is because, as framed by the defense, Plaintiff did not accept the settlement offers on advice of his counsel.

**D. Any Post-Lawsuit Filing Settlement Offer Is Irrelevant To Any Good Faith Or Reasonableness Issues As To The Civil Penalty Under the Lemon Law**

Even without the FRE 408 bar, the April 30, 2021; August 16, 2021 and October 21, 2021 settlement offer letters are inadmissible because they are irrelevant to any issue remaining in this case, including whether Defendant acted in good faith and reasonably or not repurchasing the Lemon before Plaintiff was forced to file this lawsuit. Under the Lemon Law, Defendant must act "promptly" to remedy any defect, whether by fixing that defect or by repurchasing the Lemon. *See* Cal. Civ. Code 1793.2(d)(2). In essence, Defendant is arguing that the offer to repurchase can be made "promptly" even if that offer to repurchase was made after the plaintiff had been forced to file a Lemon Law lawsuit.

Admitting post-lawsuit filing settlement communications as evidence of pre-

4

lawsuit filing conduct is against the spirit of the Act.  "The Act is manifestly a remedial measure, intended for the protection of the consumer, it should be given a construction calculated to bring its benefits into action (citation omitted)." *Murrillo v. Fleetwood Enterprises, Inc.*, 17 Cal. 4th 985, 990 (1998). Interpretations of the Act which vitiate a manufacturer's incentive to comply must be avoided.   *Kwan v. Mercedes Benz of N. Am.*, 23 Cal. App. 4th 174, 184 (1994).   The introduction of post-lawsuit settlement discussions to exonerate manufacturers from pre-lawsuit conduct would encourage manufacturers to not comply with the statutory obligation to repurchase a lemon vehicle when so required.  Manufacturers knowing that such settlement communications could be introduced in this scenario would rest assured that they could disregard statutory obligations until they were sued and only offer a "repurchase" to show good faith to try and avoid civil penalty liability.

The rationale of the Lemon Law, and the public policies underlying that statutory scheme, mandate that the manufacturer must repurchase the lemon – or make a good faith, reasonable decision not to buy back the lemon – *before* the consumer plaintiff is forced to file the lawsuit.

## III.  **CONCLUSION**

Plaintiff respectfully seeks an order *in limine* prohibiting Defendant and Defendant's experts, attorneys, and witnesses from introducing or attempting to introduce (either directly or indirectly) any testimony or evidence of settlement communications.

Dated:  November 19, 2021                    Respectfully submitted,
                                             CONSUMER LAW EXPERTS, PC


                                             By: /s/ Benjeman Beck
                                             _____
                                             BENJEMAN BECK
                                             Attorney for Plaintiff,
                                             HENRY CANANI

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF BENJEMAN BECK**

## FORD'S CONTENTIONS IN OPPOSITION

### I.   INTRODUCTION

Plaintiff seeks to exclude from evidence five separate instances when Ford Motor Company ("Ford") attempted to offer Plaintiff the compensation he seeks in this lawsuit – a repurchase. Plaintiff argues that these offers are inadmissible because they are settlement offers barred by Federal Rules of Evidence, Rule 408.

First, Ford's October 21, 2021 is not a settlement offer. This offer of repurchase is not preconditioned on Plaintiff dismissing his lawsuit of any other valuable consideration.

Second, settlement offers are admissible to prove facts other than liability or the value of a claim. Ford's repurchase offers are offered to provide its good faith actions and promptness under the Song-Beverly Act to combat Plaintiff's claims of undue delay and willful violation of the Act. They are not offered to prove liability for a repurchase, as Ford has already admitted liability on this issue.

For these reasons, and explained in more detail below, Plaintiff's motion ought to be denied and Ford's repurchase offers admitted.

### II.   FORD'S OCTOBER 21, 2021 LETTER IS NOT A SETTLEMENT OFFER UNDER FRE 408

Ford's letter from October 21, 2021, offering to pay $37,093.47 for the repurchase of the vehicle along with $7,500 in attorney's fees or actual costs as determined by the Court, while sent on Ford's counsel's letterhead was not a settlement offer as contemplated by FRE 408 as it was not conditioned on Plaintiff dismissing his lawsuit. Ford's letter explicitly states: "this offer does not require you to dismiss your lawsuit against Ford." Declaration of Alexandra Lototsky ("Decl. Lototsky"), ¶ 5, Exhibit A, at 2. Therefore, there is no "valuable consideration" that Ford requests in exchange for the buyback of Plaintiff's vehicle.

6

III.    **FEDERAL RULE OF EVIDENCE 408 DOES NOT BAR ALL EVIDENCE OF OFFERS TO COMPROMISE FOR ALL PURPOSES.**

Under FRE 408, evidence of an offer a litigant made to compromise, and statements made negotiating such offers are inadmissible when introduced "either to **prove or disprove the validity or amount of a disputed claim** or to impeach by a prior inconsistent statement or a contradiction[.]" Fed. R. Evid. 408(a). The Notes of the Advisory Committee accompanying the FRE 408 explained that the rule excluding offers is based, in part, upon the public policy in favor of compromise and settlement of disputes. Fed. R. Evid. 408 advisory committee's notes.

FRE 408 is not an absolute bar to admissibility. The Rule itself states that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, **negating a contention of undue delay,** or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). It prohibits only the introduction into evidence of an offer to compromise a claim to prove liability or amount for that claim. The evidence may be circumstantial evidence of something else. *See Rhoads v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) ("[w]hen statements made during settlement are introduced for a purpose unrelated to liability, the policy underlying the Rule is not injured").

Accordingly, courts routinely admit evidence of settlement offers or negotiations when used for purposes other than proving liability. *See Urico v. Parnell Oil Co.*, 708 F.2d 852, 854–855 (1st Cir. 1983) (admitting settlement negotiations to prove that insurance held truck hostage to obtain a favorable settlement); *Lloyd v. Thomas*, 195 F.2d 486, 491 (7th Cir. 1952) (admitting settlement between agents and distiller from another suit to prove employment by distiller). Importantly, settlement agreements or offers are admissible to prove

7

knowledge or intent. *See Sage Realty Corp. v. Insurance Co. of North America*, 34 F.3d 124, 128–129 (2d Cir. 1994) (admitting settlement offer to prove that defendant had access to documents necessary to compute damages). *See also United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir. 2002) (holding that evidence from settlement negotiations was admissible to prove "obstruction of the EPA's investigation"). Thus, the Federal Rules of Evidence only support the exclusion of settlement documents, discussions, or conduct, when used to prove liability or amount of a disputed claim.

### A. Ford's Settlement Offers Are Admissible To Show Lack Of Willfulness

The main issue that remains in this case is whether Ford's failure to repurchase Plaintiff's vehicle was willful. In order for Ford's failure to be willful, Ford would have needed to *intentionally* forgo its duties under the Song-Beverly Act while having *knowledge* that they had been triggered. *See* Judicial Council of California Civil Jury Instructions No. 3244. In this case, Plaintiff never contacted Ford prior to filing suit to express any complaints about his experience with his vehicle. Further, Plaintiff's vehicle was still undergoing repairs when the Complaint was filed. Decl. Lototsky, ¶¶ 2-4.

The civil penalty under Section 1794(c) of the California Civil Code, "like other civil penalties, is imposed as punishment or deterrence of the defendant, rather than to compensate the plaintiff. In this, it is akin to punitive damages." *Kwan v. Mercedes Benz of N. Am.* 23 Cal.App.4th 174. 184-185 (1994). Fundamentally, proving or awarding civil penalties is a separate question from liability under the Song-Beverly Act. The issue here is not whether Ford was liable for a repurchase of Plaintiff's vehicle – a liability to which Ford has already admitted – but rather whether there was bad faith involved on Ford's part in shirking its statutory obligations. The policy of excluding settlement offers is meant to not discourage the parties to attempt compromise in fear that admission

8

of a settlement offer would make the party seem more *liable* for their actions. Here, this is simply not an issue. The liability issues that Ford's settlement offers addressed are resolved by the admission of liability on the repurchase.

### B. Evidence Of Lack Of Undue Delay And Ford's Good Faith Actions Are Admissible And Relevant to Proving Willfulness

FRE 408 allows settlement offers to be admitted to counter a claim of undue delay. Ford has an obligation to act "promptly" under the Song-Beverly Act (*See* Cal. Civ. Code 1793.2(d)(2)) and whether or not it indevoured to do so may influence a jury's ruling on willfulness. While Plaintiff attempts to argue that post-litigation offers or repurchase cannot be "prompt" *per se*, Plaintiff cites to no case law in support of his contention. That is because Plaintiff's contention is untenable and would create a situation where a consumer could file a lawsuit prior to giving a manufacturer a reasonable opportunity to reach out with an offer of repurchase and obtain not only compensation but also penalties.

Further, as to Ford's October 21, 2021 letter, it ought to be up to the jury to decide whether this offer for repurchase was indeed "prompt."

Ford should also be able to use its settlement offers to show its good faith actions. As pointed out above, Plaintiff never contacted Ford prior to the start of the lawsuit and Ford simply did not know about Plaintiff's dissatisfaction with his experience. Ford's offer from May 2021 is relevant to show that Ford was prepared to act in good faith and comply with its obligations as soon as it knew that Plaintiff was dissatisfied with his customer experience.

### IV.  CONCLUSION

The reasons stated above, Plaintiff's Motion should be denied and Ford's offers of repurchase from  April 30, 2021, August 16, 2021, August 30, 2021, October 21, 2021 and October 21, 2021 be admitted.

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF BENJEMAN BECK**

Dated: November 15, 2021         SANDERS ROBERTS LLP

                       By:       /s/ *Alexandra Lototsky*

Justin H. Sanders, Esq.
Sabrina C. Narain, Esq.
Alexandra Lototsky, Esq.
Attorneys for Defendant,
FORD MOTOR COMPANY

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF BENJEMAN BECK**

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION

### I.  NO DIRECT NOTICE REQUIREMENT EXISTS UNDER § 1793.2(d)

Defendant's opposition is based on the false premise that there is a requirement that Plaintiff give Defendant notice of a desire to repurchase or replace the lemon vehicle.  However, there is no notice requirement beyond providing Defendant's authorized servicing dealership a reasonable opportunity to repair.[2]  Any assumption otherwise is problematic because it improperly shifts the affirmative obligation under the Act from the manufacturer to the consumer.  Simply put, Defendant must repurchase or replace when the vehicle qualifies even when there is no express repurchase request.[3]  As such, Defendant's reaction to the lawsuit in the form of settlement communications is irrelevant and falls squarely within the prohibitions of FRE 408.

### II.  THE SETTLEMENT COMMUNICATIONS ARE IRRELEVANT

Relying on this non-existent notice requirement, Defendant wants to improperly argue that it could not perform a repurchase evaluation until it was notified of Plaintiff's repurchase request.  According to Defendant, once Plaintiff did provide notice (here in the form of the lawsuit) it then tried to repurchase the subject vehicle and, consequently, acted in "good faith," to comply with its statutory obligations.  Defendant's argument defies logic because what it did *after* the lawsuit is irrelevant to establish whether it acted in good faith in failing to comply with the Act *before* the lawsuit (especially when Defendant has now admitted that it failed to comply with its statutory obligations under the Act).

### III.  THE SETTLEMENT COMMUNICATIONS ARE PROHIBITED BY FRE 408 AND NO EXCEPTIONS APPLY

Defendant's argument that settlement communications are still admissible

---

[2] *See, Krotin v. Porsche Cars North America, Inc.*, 38 Cal.App.4th 294, 303 (1995) (rejecting manufacturer's amici curiae argument in favor of a direct notice requirement).  Here, Defendant has admitted liability on the 1793.2(d) claim and there is on dispute that Plaintiff fulfilled his obligations under the Act.
[3] *Id.*

11

under the "other purpose" exception to FRE 408 to disprove willfulness is deceptive. Any evidence of settlement communications to show "good faith," "honest mistake" or "lack of knowledge" that the duty to repurchase under the Act triggered relies on this false premise that Plaintiff must directly notify the Defendant (instead of examining Defendant's conduct once the affirmative obligation triggered to establish good faith). The Act requires Defendant to have policies and procedures in place that ensure compliance, including mechanisms that ensure Defendant repurchases vehicles when it is supposed to regardless of whether there was a repurchase request.

An absence of an effective policy or procedure in place to ensure compliance with the Act either because Defendant did not know it was supposed to or intentionally failed to create such policy is not a defense.[4] Defendant cannot rely on a non-existent duty on Plaintiff to notify Defendant of its obligations repurchase the Subject Vehicle when a repurchase was required in place of compliant policies and procedures. Consequently, these settlement communications do not fall under the "other purposes" exception to FRE 408.

Defendant's settlement communication responses are also inadmissible under the "undue delay" exception to FRE 408. Here, there was no decision to repurchase the subject vehicle prior to the filing of the lawsuit and an ensuing question of whether Defendant delayed in promptly repurchasing. *Cf. Lukather v. General Motors*, LLC, 181 Cal.App.4th 1041. Instead, there was no evaluation until Plaintiff filed the lawsuit.

## IV.   FORD'S SOLE PURPOSE IS TO DISPROVE LIABILITY AND COMPROMISE THE VALUE OF THE DISPUTED CIVIL PENALTY CLAIM

---

[4] *Kwan v. Mercedes-Benz of North America, Inc.,* 23 Cal.App.4th 174, 185 (1994) ["manufacturers [cannot] escape the penalty by deliberately remaining ignorant of the facts.:]; *see also, Orgel v. American Isuzu Motors, Inc.,* 90 Cal.App.4th 1094, 1105 (2001) [substantial evidence supported civil penalties when the manufacturer's internal repair policies were unreasonable, not in good faith and created hidden obstacles to consumers seeking redress].

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF BENJEMAN BECK**

1    Defendant's October 21, 2021 offer to settle a portion of the disputed claim

2    is still a settlement communication.  This offer seeks to extinguish a partial claim

3    (the breach of express warranty claim).  Defendant will attempt to introduce this

4    settlement communication to show it acted in good faith so that it may dispute the

5    willful failure to comply aspect of the Act and the corresponding civil penalty

6    damages.   This offer was close in time to the admission of liability and is

7    therefore irrelevant as any claim that Defendant "did what it was supposed to do"

8    on October 21, 2021 is possible with the concurrent admission of liability.  As

9    such, this offer is also a settlement communication prohibited by FRE 408.

10   **V.    A MANUFACTER SHALL REPURCHASE OR REPLACE UNDER**

11   **1793.2(d)(1) AND ANY "OFFERS" TO REPURCHASE AFTER THE**
     **MANUFACTURER   HAS   VIOLATED   ITS   REPURCHASE**

12   **OBLIGATIONS ARE IRRELEVANT**

13   Nowhere in Civil Code section 1793.2(d)(1) is the word "offer" included.[5]

14   Instead, the statute requires that manufacturer "shall repurchase or replace" at the

15   consumer's election the lemon vehicle.[6] Defendant cites to *Lukather v. General*

16   *Motors*, LLC, 181 Cal.App.4th 1041, 1048, where the Court analyzed the prompt

17   repurchase or replacement element under 1793.2(d) and whether GM acted

18   promptly in repurchasing or replacing the subject vehicle.  *Id.* The court was

19   unpersuaded by GM's argument that it promptly complied with the Act when, in

20   response to a prelitigation repurchase request GM for months attempted to

21   persuade plaintiff to accept a replacement instead of a repurchase.  *Id.*   Only

22   because the consumer had made a repurchase the court determined that GM's

23   communications with plaintiff were relevant for evaluating whether GM promptly

24   complied with its repurchase or replacement obligations.  In *Lukather*, liability

25

26   _____

     [5] "[I]f the manufacturer or its representative in this state does not service or
     repair the goods to conform to the applicable express warranties after a reasonable
27   number of attempts, the manufacturer *shall either replace the goods or reimburse*
     *the buyer* in an amount equal to the purchase price paid by the buyer. . . ."  Cal.
     Civ. Code § 1793.2 (Emphasis added).
28   [6] *Id.*

13

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF**
**BENJEMAN BECK**

1   was admitted GM must repurchase or replace the vehicle before the lawsuit was

2   filed.   *Id.*   The only issue was whether GM acted promptly in fulfilling its

3   statutory obligations which it had already conceded and naturally an examination

4   of whether GM's post admission conduct was relevant.[7]

5          Unlike *Lukather*, here we are not confronted with a situation where

6   Defendant conceded liability prior to filing suit and there was no prelitigation

7   settlement offer (or request).  Here, Defendant failed to promptly repurchase the

8   subject vehicle because it made no repurchase offers prior to litigation and denied

9   liability in its original Answer.  The relevant time period to evaluate at trial in

10  this case is whether Defendant acted in good faith before the lawsuit was filed.

11         For the same reason settlement offers are prohibited from admission into

12  evidence as they could be used to prove liability, settlement offers are prohibited

13  from admission into evidence to disprove liability or compromise the value of a

14  disputed claim.  The policy of FRE 408 is similarly injured in the latter example

15  as it would encourage acceptance of an otherwise lowball offer for fear of

16  exposure to the jury of continuing with litigation despite the issuance of a

17  repurchase.[8]

18  **VI.    CONCLUSION**

19         The April 30-May 1, 2021; August 16, 2021; August 30, 2021; October 21,

20  2021 and October 21, 2021 settlement offers should be excluded.

21  Dated: November 8, 2021                    CONSUMER LAW EXPERTS, PC

22

23                                            By: _____/s/ Benjeman Beck_____

24                                                Benjeman Beck
                                                  Attorneys for Plaintiff,
25                                                HENRY CANANI

26

27  _____

28  [8] *See Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017).

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF
BENJEMAN BECK**

## DECLARATION OF BENJEMAN BECK

1.      I am over the age of 18 and not a party to the action.  I am an attorney at law, duly admitted and licensed to practice before all courts of this State and I am a partner of Consumer Law Experts, P.C. ("CLE") located at 5757 W. Century Blvd., Suite 500, Los Angeles, CA 90045.  I am one of the attorneys of record for Plaintiff in this action and my knowledge of the information and events described herein derives from a combination of my personal knowledge and a careful review of the file, relevant court records and communications with other Plaintiff's counsel, and if called as a witness, I could and would competently testify thereto.

2.      I submit this declaration in support of the Plaintiff's Motion *In Limine* No. 2 to Exclude Settlement Communications.

3.      I met and conferred with counsel for Ford, Alexandra Lototsky, by phone on November 2, 2021 for approximately forty-two minutes regarding Plaintiff's Motions *in Limine* Nos. 1-3 following a letter correspondence outlining the evidence Plaintiff seeks to exclude and the legal basis for the exclusion. Attached hereto as **Exhibit 1** is a true and correct copy of that correspondence.

4.      Attached hereto as **Exhibit 2** is a true and correct copy of Ford's meet and confer correspondence re Ford's MILs 1-3.

5.      Attached hereto as **Exhibit 3** is a true and correct copy of an email correspondence on May 1, 2021 from Ford's counsel.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of an email correspondence on August 16, 2021 from Ford's counsel.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of Ford's August 30, 2021 Rule 68 Offer.

8.      Attached hereto as **Exhibit 6** is a true and correct copy of a letter from Ford's counsel dated October 21, 2021.

9.      Attached hereto as **Exhibit 7** is a true and correct copy of Ford's October 21, 2021 Rule 68 Offer.

15

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF BENJEMAN BECK**

1    I declare under penalty of perjury under the laws of the United States of
2  America that the foregoing is true and correct and if called as a witness I would so
3  testify.

4

5  Dated: November 8, 2021                    CONSUMER LAW EXPERTS, PC

6

7                                             By:      /s/ Benjeman Beck
                                                       Benjeman Beck

**PLAINTIFF'S MOTION *IN LIMINE* NO. 1; DECLARATION OF
BENJEMAN BECK**

# EXHIBIT 1

# LEMON LAW EXPERTS

November 2, 2021

<u>**VIA EMAIL ONLY**</u>

Alexandra Lototsky
Sanders Roberts
1055 West 7th Street, Suite 3200,
Los Angeles, CA 90017
Telephone: (213) 426-5000
Facsmile: (213) 234-4581
Email: alotosky@sandersroberts.com


      Re:    **<u>Henry Canani v. Ford Motor Company</u>**
               Case No. 2:21-cv-03346-SB-JC

Dear Ms. Lototsky:

As discussed in the Rule 16 Conference, we intend to file the following motions *in limine* absent an agreement that Ford Motor Company (Ford) will not introduce or attempt to introduce testimony, evidence or argument of the type the MILs are intended to preclude. We can discuss each of these further this afternoon in our scheduled call:

**1.**  **<u>MIL No. 1: Exclude Settlement Offers</u>**

Ford has indicated that it improperly intends to introduce five settlement communications:

    i.    the May 1, 2021 letter;
    ii.   the August 16, 2021 letter,
   iii.   the August 30, 2021 Rule 68 Offer;
    iv.   the October 21, 2021 letter; and
    v.   the October 21, 2021 Rule 68 Letter.

FRCP 68 and FRE 408 exclude admissibility of settlement communications. "Evidence of an unnaccepted offer is not admissible except in a proceeding to determine costs." FRCP, subdivision (b). Plaintiff has not accepted either of the two Rule 68 Offers and consequently these Offers are inadmissible.

Further, the Rule 68 Offer and the three letters are prohibited from being introduced into evidence as they are settlement communications. FRE 408 which prohibits the use of evidence to "prove or disprove the validity or amount of a dipsuted claimt or to impeach a prior inconsistent statement or contradiction." FRE, subdivision (a).

5757 West Century Boulevard, Suite 500, Los Angeles, California 90045
Telephone (310) 442-1410 • Facsimile (877) 566-8828
Email: info@nolemon.com • www.consumerlawexperts.com

Last, First

# CONSUMER LAW EXPERTS
## PC

Page | 2

November 2, 2021

The settlement communications are not relevant under FRE 401.  The issue is whether Ford's refusal to repurchase the subject vehicle prior to the filing of the lawsuit was a decision made reasonably and in good faith.  The issue is not whether Ford offered to repurchase the subject vehicle after it was sued.  Otherwise, Plaintiff could offer into evdience each and every case under the Song-Beverly Act in which a manufacturer made a "repurchase offer" as evidence that a manufacturer's offer was made in bad faith (e.g. only in response to the filing of the lawsuit).

Even if these communications were relevent, they confuse the issues and are prohibited from introduction into evidence under FRE 401 and 403.  Evidence of unsuccessful settlement discussions *after* Ford was sued will confuse the issue (e.g whether Ford's refusal to repurchase the subject vehicle prior to the filing of the lawsuit was a decision made reasonably and in good faith).  *Sw. Nurseries, LLC v. Florists Mut. Ins., Inc.*, 266 F. Supp. 2d 1253, 1259 (D. Colo. 2003).  Further, this evidence is unfairly prejudicial and is a wate of time as it would require context in the form of attorney testimony and reveal attorney-client privileged communications and attorney-client work product explaining the analysis (e.g. why the "offers" were not accepted) when Plaintiff would not otherwise have to disclose attorney-client privileged communications.

## 2.   MIL No. 2: Exclude Evidence, Argument or Testimony that Plaintiff Must Request a Repurchase or Replacement

The consumer is under no requirement to request a repurchase and any suggestion otherwise is unfairly prejudicial and confuses the issue.  FRE 401 and 403.  "[T]he Act does not *require* consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties—other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle."  *Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 302–03, (1995), *as modified on denial of reh'g* (Sept. 14, 1995).  Any introduction or attempt to introduce (e.g. through suggestion) evidence or argument that (1) Ford can only perform a repurchase evaluation when a consumer requests a repurchase; (2) Ford is under no obligation to evaluate a consumer's vehicle for a repurchase unless that consumer affirmatively requests a repurchase; (3) that "it is unfair or not practical that Ford should have to evaluate a consumer vehicle for repurchase on the warranty claim submissions alone is unfair; etc." is inadmissible and contrary to settled law.

## 3.   MIL No. 4  Exclude Evidence, Argument or Testimony Re Arbitration

# CONSUMER LAW EXPERTS
## PC

       Ford has indicated that it intends to introduce evidence that Plaintiff could have, instead of filing suit, availed himself of arbitration, either through a certified manufacturer program or some other form of arbitration program.  The Song-Beverly Act, at Civil Code section 1793.2(d)(2) provides guidance on this question:

> If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer. . . .  However, the buyer shall be free to elect restitution in lieu of replacement.

Under the Act, the "manufacturer has an affirmative duty to repalce a vehicle or to make restitution to the buyer."  *Lukather v. General Motors, LLC*, 181 Cal.App.4th 1041, 1050 (2010). The "Act does not require consumers to take any affirmative steps to secure relief . . . other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle."  *Id.* Accordingly, the Act does not require arbitration nor does the Act make the availability of arbitration a defense to Defendant's obligation to repurchase a defective vehicle.

       Further, such evidence is unfairly prejudicial under FRE 403 since a jury may view the failure to arbitrate as a reason to deny an otherwise valid claim.  To negate this prejudice, Plaintiff would be forced to conduct a "trial within a trial" to establish his contention that any arbitration process offered by the Defendant would be unfairly biased against consumers.  Such a "trial within a trial' would be confusing, unfairly prejudicial and a wate of time.  FRE 403.

       Moreover, Mr. Canani did not utilize arbitration and any such discussion otherwise is not relevant under FRE 401.  Even if Mr. Canani had arbitrated the case, the results of the arbitration are non-binding.  *See* Civ. Code § 1793.22(d)(2).

       Lastly, Plaintiff is not pursuing civil penalties under Civil Code section 1794, sudivision (e) which allows for the recovery of civil penalties if the manufacturer does not maintain a qualified third-party dispute resolution process.  Rather, Plaintiff is pursuing civil penalties under 1794(c), for Ford's willful failure to repurchase the vehicle.  As such, any argument, evidence or testimony regarding Ford's third-party dispute resolution process is irrelevant and a waste of time.  FRE 401 and 403.

       Additionally, I have not included a motion *in limine* to exclude the introduction of any argument or evidence re attorney fees since my understanding from the Rule 16 Conference is that Ford would not challenge such motion and has agreed not to not to introduce any such

Last, First

# CONSUMER LAW EXPERTS
## PC

Page | 4

November 2, 2021

evidence or argument regarding attorney fees at trial.  Please confirm and I look forward to speaking with you this afternoon.

Very Truly Yours,

Benjeman R. Beck,
Senior Partner
Consumer Law Experts, PC

5757 W Century Blvd., Suite 500, Los Angeles, California 90045
Telephone (310) 442-1410 • Facsimile (877) 566-8828
Email: Ben@nolemon.com • www.consumerlawexperts.com

# **EXHIBIT 2**



SANDERS ROBERTS

Sanders Roberts LLP
1055 West 7th Street, Suite 3200, Los Angeles, CA 90017
p 213 426 5000 | f 213 234 4581 | sandersroberts.com

October 29, 2021

**VIA E-Mail**

Benjamin Beck
Sean Crandall
*Consumer Legal Experts*
5757 West Century Blvd.,
Suite 500
Los Angeles, CA 90045

*Re:    Henry Canani v. Ford Motor Company.*
        Case No.:        2:21-cv-03346-SB-JC

Dear Counsel:

Please allow this letter to serve as a meet and confer on the motions *in limines* ("MIL"). Ford Motor Company ("Ford") intends to file in this case.

## 1. MIL No. 1 – Order to Exclude testimony of Plaintiff's expert, Thomas Lepper

This MIL seeks the exclusion of testimony by Plaintiff's expert, Thomas Lepper, specifically as to any vehicle inspection conducted by Mr. Lepper and the results/findings of such an inspection. This testimony would be unduly prejudicial and ought to be excluded under Federal Rules of Evidence (FRE) 403 because 1) Mr. Lepper did not disclose in his expert report that he conducted a vehicle inspection or what the results of any such inspection were; 2) Plaintiff did not produce the subject vehicle for inspection, despite a noticed vehicle inspection, multiple attempts by Defendant to schedule the inspection, including an offer for the parties to inspect the vehicle on separate days if availability of experts was going to prevent an inspection from taking place.

## 2. MIL No. 2 – Order to Admit Ford's Rule 68s and Repurchase Offers

This MIL seeks an Order admitting the following Repurchase offers made by Ford:

- May 1, 2021 – Offer of Repurchase made by e-mail
- August 16, 2021 – Second Offer of Repurchase made by e-mail
- Ford's Rule 68 served on August 30, 2021
- Ford Lemon Law Buyback Letter, dated October 21, 2021
- Ford's Rule 68 served on October 21, 2021

Federal Rule of Evidence 408 prohibits evidence of settlement or attempted settlement of a disputed claim when offered as an *admission of liability or the amount of a disputed claim.* However, Rule 408 does *not* prohibit evidence of settlement or attempted settlement when offered to prove something other than liability or amount. Rule 408 states that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

Accordingly, courts routinely admit evidence of settlement offers or negotiations when used for purposes other than proving liability. (*See Urico v. Parnell Oil Co*., 708 F.2d 852, 854–855 (1st Cir. 1983) (admitting settlement negotiations to prove that insurance held truck hostage to obtain a favorable settlement; *Lloyd v. Thomas*, 195 F.2d 486, 491 (7th Cir) (admitting settlement between agents and distiller from another suit to prove employment by distiller).) Importantly, settlement agreements or offers are admissible to prove knowledge or intent. (*Sage Realty Corp. v. Insurance Co. of North America*, 34 F.3d 124, 128–129 (admitting settlement offer to prove that defendant had access to documents necessary to compute damages). *See also U.S. v. Austin*, 54 F.3d 394, 400 (7th Cir. 1995) (admitting evidence of a consent decree to show criminal intent in the trial of an art dealer selling counterfeit works); *United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1045 (9th Cir.2002) (holding that evidence from settlement negotiations was admissible to prove "obstruction of the EPA's investigation").

Ford intends to offer its repurchase offers not as evidence of lack of liability under the Song-Beverly Act – Ford has already agreed to admit liability as to breach of express warranty – but rather as evidence of: 1) its good faith actions and intent, and 2) Plaintiff's knowledge that Ford was willing to repurchase his vehicle as early as two months after he filed his lawsuit and while his vehicle was still at the dealership for its last presentation.

Further, Ford's buyback offer from October 21, 2021 is not a settlement offer as contemplated by FRE 408, for it is not conditioned on Plaintiff dismissing his lawsuit.

### 3. MIL No. 3 – Order to Exclude any references to AutoNation Ford Torrance as "Ford"

This MIL seeks an Order excluding any mention or reference to Ford's authorized dealership of AutoNation Ford, either on its own or collectively with Defendant Ford, as "Ford." Ford seeks to exclude these references because they may prejudice the jury to unfairly regard the manufacturer and its dealership as a single entity when they are in fact separate businesses and AutoNation Ford is not an agent of Ford under California law. (*Mel Clayton Ford v. Ford Motor Co.* (2002) 104 Cal.App.4th 46, 49; *Avalon Painting Co. v Alert Lumber Co.* (1965) 234 Cal.App.2d 178, 184 ["A Ford dealer or retailer may in a layman's view be an agent of the Ford Motor co., but he is not an agent in the legal sense of that relationship."].) Statements or actions by AutoNation Ford employees cannot be imputed onto Ford. The Song-Beverly Act provides for very specific situations in which a manufacturer and its dealership may be conflated (primarily, when assessing the number of repair attempts a vehicle has undergone), but these situations do not include statements made by dealership employees or their negligent actions. Nor are Ford and its dealerships in an agency relationship with regard to sharing of information. Therefore, references to Ford and its dealership as thought they are a single entity is misleading and prejudicial.

As you know, the parties are required to meet and confer following receipt of this letter. Please provide your availability for a meet and confer between November 1, 2021 and November 3, 2021 as soon as possible. I am available on November 1, 9 a.m. – 1:30 p.m., November 2, 9 a.m. – 1:00 and after 3 p.m., November 3, 11:30 a.m. – 2 p.m.

Sincerely,
**SANDERS ROBERTS LLP**

Alexandra Lototsky

# EXHIBIT 3

**Sean Crandall**

| | |
|---|---|
| **From:** | Larsen, Chelsea <CLarsen@dykema.com> |
| **Sent:** | Friday, April 30, 2021 9:45 PM |
| **To:** | Benjeman Beck Esq.; Sean Crandall |
| **Cc:** | Stewart, Shannon |
| **Subject:** | OFFER - Henry Canani v Ford Motor Co. - Case No. 21STCV10394 |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Counselors,

With the goal of reaching a prompt resolution for the benefit of your client, Ford has authorized me to offer to repurchase your client's vehicle based on the formula outlined in the Song-Beverly Consumer Warranty Act, which includes a refund of the following:

- Purchase price of the vehicle itself
- Charges for transportation and manufacturer-installed options
- Finance charges actually paid by Plaintiff
- Sales tax, license fees, registration fees, and other official fees
- Incidental and consequential damages

> (See Judicial Council of California Civil Jury Instructions, Verdict Form 3203, Civil Code Section 1793.2(d)(2)(B), et al.)

If you would like Ford to assign numbers to Song-Beverly's repurchase formula, please provide me with a legible copy of the Retail Installment Sales Contract, statement of monthly payments made, and a current loan payoff.

As outlined above, Ford agrees to pay Plaintiff for any manufacturer-installed options, collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus all incidental and consequential damages to which Plaintiff is entitled under Song-Beverly including towing, and rental car costs actually incurred by your client. Again, at your earliest convenience, please provide all documents that support these additional damages.

Should any amounts still be owed to the lender on the subject vehicle, Ford will pay the outstanding loan balance to the lender.

Ford intends to take the usage credit (mileage offset) provided for in Song-Beverly. Again, Ford is willing to provide you with an itemized mileage offset after a legible copy of the purchase contract is provided. Ford will calculate the usage credit by multiplying the actual price of the new motor vehicle paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity.

It is an express condition of this Offer that, if accepted, Plaintiff will return the subject vehicle to a mutually agreeable authorized Ford dealership, and on that same date execute all required California Department of Motor Vehicle forms, including but not limited to, DMV Form 262, necessary to transfer title of the subject vehicle to Ford free and clear of all liens and encumbrances.

Ford will also pay your attorney fees and costs in the amount of $7,500, or, should this amount be refused, Ford is willing to allow the Court to determine, in a noticed motion filed pursuant to Civil Code Section 1794(d), the reasonable, necessary and actually incurred amount of attorney's fees and costs in this matter.

This offer is being made without admitting any liability or waiver of defense.

Best regards,
Chelsea

---

**From:** Stewart, Shannon <SStewart@dykema.com> **On Behalf Of** Larsen, Chelsea
**Sent:** Friday, March 19, 2021 10:46 AM
**To:** 'ben@nolemon.com' <ben@nolemon.com>; sean@nolemon.com
**Cc:** Larsen, Chelsea <CLarsen@dykema.com>; Stewart, Shannon <SStewart@dykema.com>
**Subject:** Henry Canani v Ford Motor Co. - Case No. 21STCV10394

Counselors:

We have been retained by Ford to evaluate the above-referenced case for early resolution.  Kindly provide any documentation you have that will allow us to most accurately assess the case.  The following documents are generally helpful:

1.  Repair orders for the subject vehicle
2.  Purchase contract for the subject vehicle
3.  Payment history for the subject vehicle
4.  Receipts for incidental items
5.  Payoff letter with "good through" date and per diem amount
6.  Vehicle registration

If you would like, feel free to give me a call to discuss the details of the case.

Best regards,
Chelsea



| **Chelsea Dee Larsen** | 248-203-0732 Direct | 39577 Woodward Avenue, Suite 300 |
| Attorney | 248-203-0700 Main | Bloomfield Hills, Michigan  48304 |
| CLarsen@dykema.com | 855-234-8991 Fax | www.dykema.com |

*** Notice from Dykema Gossett PLLC: This Internet message may contain information that is privileged, confidential, and exempt from disclosure. It is intended for use only by the person to whom it is addressed. If you have received this in error, please (1) do not forward or use this information in any way; and (2) contact me immediately. Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.

# EXHIBIT 4

**Sean Crandall**

---

| | |
|---|---|
| **From:** | Sean Crandall |
| **Sent:** | Tuesday, August 17, 2021 5:31 PM |
| **To:** | Alexandra Lototsky |
| **Cc:** | Alexis Council |
| **Subject:** | RE: Canani v. Ford - CONFIDENTIAL SETTLEMENT COMMUNICATION |

Counsel:

Plaintiff can accept $119,000.00, which includes a repurchase, civil penalties, incidental and consequential damages, pre-judgement interest and post-judgement interest, and attorney's fees and costs, for total settlement of this matter.



**Sean Crandall, Esq.**

Associate Attorney | Consumer Law Experts, P.C.

**D:** 310-442-1410 ext. 182
**F:** 877-566-8828
**A:** 5757 W. Century Blvd., Suite 500
Los Angeles, CA 90045

sean@nolemon.com
nolemon.com

In response to recent events concerning COVID-19, Consumer Law Experts, PC is moving to Electronic Mail Service for all documents until we can safely resume other forms of service. Please e-serve all legal correspondence, motions, discovery and pleadings in place of service via U.S. mail or other methods that involve delivery of materials to our offices.  Please include in your electronic service all attorneys on the applicable proof of service.  Please also cc all e-served documents to the following address: **service@nolemon.com**.

IMPORTANT NOTICE:  This email is the sole property of Consumer Law Experts, PC.  It is intended for the identified and named recipient(s) only. If you are not the intended recipient of this email, or the employee of or agent responsible for delivery to the intended recipient, you should delete this e-mail and destroy any printouts or copies.  Any review or use of this communication by anyone other than its identified and named recipient(s) is unauthorized; is a breach of the privacy rights of the sender and of the recipient(s); and will subject the unauthorized reader or user to liability.  This communication contains confidential information that may be protected by the attorney work product doctrine and/or the attorney-client privilege. Circular 230 Disclosure: Pursuant to recently-enacted U.S. Treasury Department Regulations, we are now required to advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters. If you are a potential client, the information you disclose to us by email will be kept in strict confidence and will be protected to the full extent of the law.  Please be advised Consumer Law Experts, P.C. and its lawyers do not represent you until you have signed a retainer agreement with the firm.  Until that time, you are responsible for any statutes of limitations or other deadlines for your potential case.

---

**From:** Alexandra Lototsky <alototsky@sandersroberts.com>
**Sent:** Monday, August 16, 2021 3:05 PM
**To:** Sean Crandall <sean@nolemon.com>
**Cc:** Alexis Council <acouncil@sandersroberts.com>
**Subject:** Canani v. Ford - CONFIDENTIAL SETTLEMENT COMMUNICATION

Hi Sean.

I just left you a voicemail regarding this case. One of the issues I wanted to touch base with you on was settlement and see if we can put this one to rest.

We're offering a repurchase of your client's vehicle + fees by motion. Here is our current repurchase calculation. Please let me know if you have any questions about it.

Down Payment        $ 4,500.00
Monthly Payments $ 19,798.02 (33 x $599.94) (11/27/2018 - 7/27/2021)
Incidental Items  $496.00 (10/31/20 to 10/31/21 reg. is $496.00)*

(Less Mileage) -$ 1,884.70 (6,297 – 73 = 6,224 x 36,337.44 / 120k)
(Less Mnfr. Rebate) -$ 3,000.00
Subtotal to Plaintiff: $ 20,413.32
Atty Fees and Costs: $ TBD
Loan Pay Off: $ 16,198.83 (26 x $599.94 = $15,598.44 + $600.39 = $16,198.83)

---------------------------------------------

**Grand Total:  $ 36,108.15**

*additional incidentals, such as other registration, can be added upon proof.

Please advise at your earliest convenience as to your client's response to this offer.

Thank you,



**Alexandra Lototsky,** ATTORNEY AT LAW
alototsky@sandersroberts.com

Sanders Roberts LLP
1055 West 7th Street, Suite 3200, Los Angeles, CA 90017
p 213 426 5000 x 3347  |  f 213 234 4581  |  sandersroberts.com

In response to recent events concerning COVID-19, Sanders Roberts LLP is moving to Electronic Mail Service for all documents. Please e-serve all legal correspondence, motions, discovery and pleadings in place of service via U.S. mail or other methods that involve delivery of materials to our offices.  Please include in your electronic service all attorneys on the applicable proof of service.  Please also cc all e-served documents to the following address: mail@sandersroberts.com.

NOTICE:  CONFIDENTIAL AND PRIVILEGED INFORMATION - This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, distribution or disclosure by others is strictly prohibited.  If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# EXHIBIT 5

1  JUSTIN H. SANDERS (SBN 211488)
2  jsanders@sandersroberts.com
   SABRINA C. NARAIN (SBN 299471)
3  snarain@sandersroberts.com
   ALEXANDRA LOTOTSKY (SBN 311921)
4  alototsky@sandersroberts.com
5  **SANDERS ROBERTS LLP**
   1055 W. 7th Street, Suite 3200
6  Los Angeles, CA 90017
7  Telephone:   213-426-5000
   Facsimile:    213-234-4581
8
9  Attorneys for Defendant
   **FORD MOTOR COMPANY**
10
11
12              UNITED STATES DISTRICT COURT
13              CENTRAL DISTRICT OF CALIFORNIA
14
   HENRY CANANI, an individual,          )   Case No.: 2:21-cv-03346
15                                        )
                Plaintiff,                )
16                                        )   **DEFENDANT FORD MOTOR**
         vs.                              )   **COMPANY'S OFFER OF**
17                                        )   **JUDGMENT PURSUANT TO FED. R.**
                                          )   **CIV. P. 68**
18 FORD MOTOR COMPANY, a                  )
   Delaware Corporation, and DOES 1       )
19 through 50, inclusive,                 )   Sup. Ct. Complaint Filed: March 17, 2021
                                          )
20              Defendants.               )
21                                        )
                                          )
22                                        )
                                          )
23                                        )
24
25
26
27
28

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

Defendant Ford Motor Company ("Ford") hereby offers to allow entry of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure as follows:

1.      Ford will pay to HENRY CANANI ("Plaintiff") the sum of $36,612.15 with costs now accrued. Ford will pay this amount, less any remaining loan balance on the Subject Vehicle, to Plaintiff and their counsel of record, Consumer Law Experts, PC. Ford will pay the remaining loan balance on the Subject Vehicle directly to the lienholder within seven (7) days after Plaintiff's surrender the Subject Vehicle to Ford or its designee, as described in Paragraph 3.

2.      As part of this Offer, Ford agrees that:

(a)      Ford offers to permit judgment to be entered solely upon the terms of paragraph 1, and Plaintiff shall retain the right to petition the Court for an award of reasonably and actually incurred attorney fees and costs recoverable pursuant to California Code of Civil Procedure Section 1794(d). In ruling on Plaintiff's fee/cost motion(s), the attorney fees, expenses and costs amount shall be calculated as if Plaintiff was found to have prevailed in this action under section 1794(d) of the California Code of Civil Procedure as of the date of this offer of judgment. Ford expressly reserves all defenses to Plaintiff's fee/costs motion(s). Plaintiff may recover for attorney fees and costs reasonably and actually incurred in bringing such a fee/cost motion(s). Ford will pay the attorney fees and cost amounts determined by the Court within 30 days' written notice of entry of the Court's ruling awarding those amounts.

3.      Plaintiff will surrender the 2018 Ford F-150, VIN 1FTEX1CPXJKF22642 ("Subject Vehicle") with clear title, free and clear of all liens and encumbrances, other than the lender of record, to Ford or its designee. Plaintiff will deliver the Subject Vehicle to Ford or its designee on a date at a time

and place mutually agreeable no later than 45 days after the entry of Judgment. Plaintiff will also execute all documents which are necessary to effectuate the complete transfer of the Subject Vehicle to Ford.

4.     This Offer of Judgment will remain open and irrevocable for fourteen (14) days after its service. If Plaintiff does not respond within fourteen (14) days after service, the Offer is deemed withdrawn. Failure to accept this Offer of Judgment will result in Ford claiming all benefits accruing to it under Rule 68 should Plaintiff not achieve a more favorable result at the trial of this action.

5.     Ford will waive all claims it may have for costs and fees in this action.

6.     Plaintiff will file a Request for Dismissal, with prejudice, when the Plaintiff's attorney fees discussed in paragraph 2 have been resolved and within 14 days after Ford tenders the final amounts due to Plaintiff and Plaintiff's counsel. Plaintiff is not required to execute any separate release of claims.

7.     This Offer is inclusive of all damages, restitution, costs, attorney fees, expenses, penalties, prejudgment interest, post judgment interest, and any other sums or amounts or claims that have been asserted by Plaintiff in this action. If this Offer is accepted, Plaintiff shall not be entitled, except as specified in paragraphs 1 and 2, to seek damages, costs, attorney fees, expenses, penalties, prejudgment interest, post judgment interest, or any other sums or amounts or claims in this action.

8.     Pursuant to Federal Rules of Civil Procedure Rule 68, this Statutory Offer can be accepted by signing a statement that the offer is accepted. Set forth below is a statement indicating acceptance of this Statutory Offer that may be signed by counsel for Plaintiff. If this Offer is not accepted and notice given by Plaintiff within the 14-day time period provided by Rule 68 of the Federal Rules of Civil Procedure, then it shall be deemed withdrawn.

///

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

1      PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil

2  Procedure Rule 68, if this Offer is not accepted and Plaintiff fails to obtain a more

3  favorable judgment, Plaintiff shall not recover post-offer costs, including attorney

4  fees from the date of this Statutory Offer, and shall be required to pay Ford's costs

5  from the time of the offer. Further, the Court, in its discretion, may require

6  Plaintiff to pay a reasonable sum to cover Ford's post-offer costs of the services

7  of Ford's expert witnesses, who are not regular employees of any party, actually

8  incurred and reasonably necessary in either, or both, the preparation or trial of this

9  case by Ford.

Dated:  August 30, 2021        **SANDERS ROBERTS LLP**

By:_____
      Sabrina C. Narain, Esq.
      Alexandra Lototsky, Esq.
      Attorneys for Defendant
      **FORD MOTOR COMPANY**

We hereby accept the above offer on the terms stated on behalf of Plaintiff.

Dated:  August 30, 2021        **CONSUMER LAW EXPERTS, PC**

By:_____
      Benjeman Beck, Esq.
      Sean Crandall, Esq.
      Attorneys for Defendant
      **HENRY CANANI**

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

# CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a citizen of the United States, over 18 years of age and am not a party to the within action. My business address is 1055 W. 7th Street, Suite 3200, Los Angeles, CA 90017, which is located in the County of Los Angeles where the service took place. My electronic service address is: sposwal@sandersroberts.com.

On August 30, 2021, I served the foregoing document described as:

**DEFENDANT FORD MOTOR COMPANY'S OFFER OF JUDGMENT PURSUANT TO FED. R. CIV. P. 68**

on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated in the attached service list:

☐ **VIA MAIL** I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the U.S. Postal Service. Per that practice the within correspondence will be deposited with the U.S. Postal Service on the same day shown on this affidavit in a sealed envelope with postage fully prepaid in the ordinary course of business.

☐ **VIA FACSIMILE** I caused such document to be transmitted via facsimile to the addressee(s) from the facsimile machine of Sanders Roberts LLP whose fax number is **(213) 234-4581**. No error was reported by the machine and pursuant to Rule 2008(e)(3), I caused the machine to print a record of the transmission.

☒ **VIA ELECTRONIC MAIL** I caused the documents to be transmitted by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) shown. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission(s) were unsuccessful.

☐ **VIA PERSONAL SERVICE** I caused such envelope(s) to be delivered by a process server employed by Express Network the attached documents to the office(s) of the addressee.

☐ **VIA OVERNIGHT DELIVERY (FEDERAL EXPRESS)** I caused the attached document(s) to be delivered via overnight delivery to the recipients shown on the attached service list.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. Executed on August 30, 2021, at Los Angeles, California.

*/s/ Sarah Poswal*
_____
Sarah Poswal

SANDERS ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

- i -
CERTIFICATE OF SERVICE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>SERVICE LIST</u>

*Henry Canani vs. Ford Motor Company, et al.*
Case No.: 2:21-cv-03346

CONSUMER LAW EXPERTS, PC          Attorneys for Plaintiff
Benjeman Beck, Esq.                             **HENRY CANANI**
ben@nolemon.com
Sean Crandall, Esq.
sean@nolemon.com
5757 West Century Boulevard, Suite 500
Los Angeles, CA 90045
Telephone (310) 442-1410
Fax (310) 566-8828
service@nolemon.com
docs@nolemon.com

SR

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

# EXHIBIT 6



**SANDERS ROBERTS**

Sanders Roberts LLP
1055 West 7th Street, Suite 3200, Los Angeles, CA 90017
p 213 426 5000 | f 213 234 4581 | sandersroberts.com

October 21, 2021

<u>**VIA E-Mail**</u>

Mr. Sean Crandall
*Consumer Legal Experts*
5757 West Century Blvd.,
Suite 500
Los Angeles, CA 90045

*Re:*    *Henry Canani v. Ford Motor Company.*
         Case No.:      2:21-cv-03346-SB-JC

Dear Henry Canani:

    We at Ford would like to remedy your concerns with your 2018 Ford F-150, VIN 1FTEX1CPXJKF22642. We invite you to allow us to repurchase your truck for a price that includes a refund of the following:

- Purchase price of the vehicle itself, minus a mileage offset based on the formula found in California's "lemon law" (multiply your vehicle's purchase price by the mileage on your odometer when you first took the truck in for repairs that you believe were unsuccessful, and divide that number by 120,000). Based on our review of your vehicle's repair history, we believe the first delivery of the truck for the issues you have identified as unrepaired occurred at 21,392 miles.

- Any charges you paid for transportation and manufacturer-installed options.

- Any sales tax, license fees, registration fees, and other official fees you paid in connection with buying the truck or that you paid after you believe the truck had problems that were unrepairable.

- Any incidental and consequential damages, such as the cost of towing or any rental car you may have had to use because of unrepaired problems with the truck.

- Any finance charges you paid.

- Any amount that you still owe to the lender, which Ford will pay directly to the lender.

    This offer comes as a culmination and follow-up of Ford's previous attempts to offer you a repurchase of your 2018 Ford F-150 on May 1, 2021, August 16, 2021, and August 30, 2021. Based on the records Ford currently has for the vehicle, Ford believes your reimbursement amount will be $ 37,093.47.

    Ford used this information to arrive at the buy-back amount:

    1) The financials you produced in this lawsuit indicate that you have made $19,798.02 worth of payments on your 2018 Ford F-150 and that your payoff is $16,197.15.

    2) plus $1,483.00 for collateral charges and incidental damages;

    [3] minus $1,884.70  based on the mileage on the vehicle before you first delivered the vehicle to a Ford dealer for correction of the problem alleged in your lawsuit;

[4] minus $3,000.00, which is the equivalent of the manufacturer's rebate you received at the time of purchase of your 2018 Ford F-150.

If you disagree with this calculation, please send additional information that you believe we should consider, such as: (1) record of additional payments you have made on the 2018 Ford F-150; (2) your most current payoff; (3) receipts for substitute transportation; (4) other "collateral" charges you would not have incurred but for problems you experienced with the vehicle (which in some cases may include sales tax, license fees, registration fees, and other official fees); and (5) incidental damages (such as reasonable repair, towing, and rental car costs that you actually incurred).

Once you agree to the repurchase amount, or send us the additional information that will allow us to update the repurchase amount, we can send the funds for you to receive when you return the truck to a Ford dealer that is convenient to you.  At the dealership, all the necessary California Department of Motor Vehicle forms, including DMV Form 262 to transfer title, can be taken care of.

Ford will also pay your attorney fees and costs in the amount of $7,500, or your attorney may file a motion in court to obtain a different amount.

This offer does not require you to dismiss your lawsuit against Ford, and it is being made without admitting any liability or waiving any defense in your ongoing lawsuit against Ford.

We look forward to working with you toward a resolution of this matter.

Sincerely,
**SANDERS ROBERTS LLP**

Alexandra Lototsky

cc/Jacob Doss – Ford Regional Escalation Manager

# EXHIBIT 7

JUSTIN H. SANDERS (SBN 211488)
jsanders@sandersroberts.com
SABRINA C. NARAIN (SBN 299471)
snarain@sandersroberts.com
ALEXANDRA LOTOTSKY (SBN 311921)
alototsky@sandersroberts.com
**SANDERS ROBERTS LLP**
1055 W. 7th Street, Suite 3200
Los Angeles, CA 90017
Telephone:  213-426-5000
Facsimile:   213-234-4581

Attorneys for Defendant
**FORD MOTOR COMPANY**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY CANANI, an individual, | Case No.: 2:21-cv-03346 |
| Plaintiff, | **DEFENDANT FORD MOTOR COMPANY'S AMENDED OFFER OF JUDGMENT PURSUANT TO FED. R. CIV. P. 68** |
| vs. | |
| FORD MOTOR COMPANY, a Delaware Corporation, and DOES 1 through 50, inclusive, | Sup. Ct. Complaint Filed: March 17, 2021 |
| Defendants. | |

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

Defendant Ford Motor Company ("Ford") hereby offers to allow entry of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure as follows:

1.      Ford will pay to HENRY CANANI ("Plaintiff") the sum of $ $38,093.47 with costs now accrued. Ford will pay this amount, less any remaining loan balance on the Subject Vehicle, to Plaintiff and their counsel of record, Consumer Law Experts, PC. Ford will pay the remaining loan balance on the Subject Vehicle directly to the lienholder within seven (7) days after Plaintiff's surrender the Subject Vehicle to Ford or its designee, as described in Paragraph 3.

2.      As part of this Offer, Ford agrees that:

(a)      Ford offers to permit judgment to be entered solely upon the terms of paragraph 1, and Plaintiff shall retain the right to petition the Court for an award of reasonably and actually incurred attorney fees and costs recoverable pursuant to California Code of Civil Procedure Section 1794(d). In ruling on Plaintiff's fee/cost motion(s), the attorney fees, expenses and costs amount shall be calculated as if Plaintiff was found to have prevailed in this action under section 1794(d) of the California Code of Civil Procedure as of the date of this offer of judgment. Ford expressly reserves all defenses to Plaintiff's fee/costs motion(s). Plaintiff may recover for attorney fees and costs reasonably and actually incurred in bringing such a fee/cost motion(s). Ford will pay the attorney fees and cost amounts determined by the Court within 30 days' written notice of entry of the Court's ruling awarding those amounts.

3.      Plaintiff will surrender the 2018 Ford F-150, VIN 1FTEX1CPXJKF22642 ("Subject Vehicle") with clear title, free and clear of all liens and encumbrances, other than the lender of record, to Ford or its designee. Plaintiff will deliver the Subject Vehicle to Ford or its designee on a date at a time

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

and place mutually agreeable no later than 45 days after the entry of Judgment. Plaintiff will also execute all documents which are necessary to effectuate the complete transfer of the Subject Vehicle to Ford.

4.      This Offer of Judgment will remain open and irrevocable for fourteen (14) days after its service. If Plaintiff does not respond within fourteen (14) days after service, the Offer is deemed withdrawn. Failure to accept this Offer of Judgment will result in Ford claiming all benefits accruing to it under Rule 68 should Plaintiff not achieve a more favorable result at the trial of this action.

5.      Ford will waive all claims it may have for costs and fees in this action.

6.      Plaintiff will file a Request for Dismissal, with prejudice, when the Plaintiff's attorney fees discussed in paragraph 2 have been resolved and within 14 days after Ford tenders the final amounts due to Plaintiff and Plaintiff's counsel. Plaintiff is not required to execute any separate release of claims.

7.      This Offer is inclusive of all damages, restitution, costs, attorney fees, expenses, penalties, prejudgment interest, post judgment interest, and any other sums or amounts or claims that have been asserted by Plaintiff in this action. If this Offer is accepted, Plaintiff shall not be entitled, except as specified in paragraphs 1 and 2, to seek damages, costs, attorney fees, expenses, penalties, prejudgment interest, post judgment interest, or any other sums or amounts or claims in this action.

8.      Pursuant to Federal Rules of Civil Procedure Rule 68, this Statutory Offer can be accepted by signing a statement that the offer is accepted. Set forth below is a statement indicating acceptance of this Statutory Offer that may be signed by counsel for Plaintiff. If this Offer is not accepted and notice given by Plaintiff within the 14-day time period provided by Rule 68 of the Federal Rules of Civil Procedure, then it shall be deemed withdrawn.

///

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

DEFENDANT FORD MOTOR COMPANY'S AMENDED OFFER OF JUDGMENT PURSUANT TO FED. R. CIV. P. 68

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure Rule 68, if this Offer is not accepted and Plaintiff fails to obtain a more favorable judgment, Plaintiff shall not recover post-offer costs, including attorney fees from the date of this Statutory Offer, and shall be required to pay Ford's costs from the time of the offer. Further, the Court, in its discretion, may require Plaintiff to pay a reasonable sum to cover Ford's post-offer costs of the services of Ford's expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of this case by Ford.

Dated:  October 21, 2021          **SANDERS ROBERTS LLP**

By:_____
     Sabrina C. Narain, Esq.
     Alexandra Lototsky, Esq.
     Attorneys for Defendant
     **FORD MOTOR COMPANY**

We hereby accept the above offer on the terms stated on behalf of Plaintiff.

Dated:  October 21, 2021          **CONSUMER LAW EXPERTS, PC**

By:_____
     Benjeman Beck, Esq.
     Sean Crandall, Esq.
     Attorneys for Defendant
     **HENRY CANANI**

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

DEFENDANT FORD MOTOR COMPANY'S AMENDED OFFER OF JUDGMENT PURSUANT TO FED. R. CIV. P. 68

<u>**CERTIFICATE OF SERVICE**</u>

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am a citizen of the United States, over 18 years of age and am not a party to the within action. My business address is 1055 W. 7th Street, Suite 3200, Los Angeles, CA 90017, which is located in the County of Los Angeles where the service took place.  My electronic service address is:  sposwal@sandersroberts.com.

On October 21, 2021, I served the foregoing document described as:

**DEFENDANT FORD MOTOR COMPANY'S OFFER OF JUDGMENT PURSUANT TO FED. R. CIV. P. 68**

on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated in the attached service list:

☐ <u>**VIA MAIL**</u> I am readily familiar with this office's practice for collection and processing of correspondence for mailing with the U.S. Postal Service.  Per that practice the within correspondence will be deposited with the U.S. Postal Service on the same day shown on this affidavit in a sealed envelope with postage fully prepaid in the ordinary course of business.

☐ <u>**VIA FACSIMILE**</u> I caused such document to be transmitted via facsimile to the addressee(s) from the facsimile machine of Sanders Roberts LLP whose fax number is **(213) 234-4581**. No error was reported by the machine and pursuant to Rule 2008(e)(3), I caused the machine to print a record of the transmission.

☒ <u>**VIA ELECTRONIC MAIL**</u> I caused the documents to be transmitted by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) shown.  I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission(s) were unsuccessful.

☐ <u>**VIA PERSONAL SERVICE**</u>  I caused such envelope(s) to be delivered by a process server employed by Express Network the attached documents to the office(s) of the addressee.

☐ <u>**VIA OVERNIGHT DELIVERY (FEDERAL EXPRESS)**</u> I caused the attached document(s) to be delivered via overnight delivery to the recipients shown on the attached service list.

I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. Executed on October 21, 2021, at Los Angeles, California.

*/s/ Sarah Poswal*
_____
Sarah Poswal



## SERVICE LIST

*Henry Canani vs. Ford Motor Company, et al.*
Case No.: 2:21-cv-03346

CONSUMER LAW EXPERTS, PC
Benjeman Beck, Esq.
ben@nolemon.com
Sean Crandall, Esq.
sean@nolemon.com
5757 West Century Boulevard, Suite 500
Los Angeles, CA 90045
Telephone (310) 442-1410
Fax (310) 566-8828
service@nolemon.com
docs@nolemon.com

Attorneys for Plaintiff
**HENRY CANANI**

SANDERS
ROBERTS
1055 W. 7TH STREET
SUITE 3200
LOS ANGELES, CA 90017

**CERTIFICATE OF SERVICE**

     I hereby certify that on November 19, 2021, I filed the foregoing document entitled **PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXCLUDE SETTLEMENT COMMUNICATIONS; DECLARATION OF BENJEMAN BECK** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

By: */s/Benjeman Beck*

Benjeman Beck
Sean Crandall
Carey Wood
Attorneys for Plaintiff,
HENRY CANANI